**DOMINION HOME OWNERS ASSOCIATION, INC., Respondent,**

v.

**Donald D. and Elizabeth MARTIN, Appellants.**

No. WD 53388.

Missouri Court of Appeals, Western District.

Submitted June 23, 1997.

Decided Oct. 14, 1997.

David E. Martin, Independence, for appellants.

David H. Jeter, Blue Springs, for respondent.

Before BERREY, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

This is an action for collection of dues and special assessments imposed by a home owners association. Donald and Elizabeth Martin own three lots in a fence-enclosed subdivision located in Independence, Missouri, known as The Dominion. The Dominion Home Owners Association, Inc. (" the Association") filed an action against the Martins, attempting to collect annual assessments

(dues) and other assessments. Both parties filed motions for summary judgment. The trial court denied the Martins' motion for summary judgment, and granted the motion of the Association. The Martins appeal the trial court's denial of their motion for summary judgment. Because an order denying a motion for summary judgment is not appealable, we decline review of Point I of appellants' brief. Because we find no error in the trial court's award of attorney's fees, which appellants challenge in Point II, we affirm the trial court's award of attorney's fees.

The operative facts are not disputed. The Dominion is a small subdivision of land located in Independence, Missouri, consisting of twenty-two single family residential lots. Weatherstone Development Corporation ("Weatherstone") planned and developed The Dominion. The Dominion is an exclusive subdivision, designed with substantial green areas, landscaping, entry way signage and monuments, a wrought iron perimeter fence, and certain electrical and lighting features. On April 18, 1988, Weatherstone executed a document entitled "Declaration of Covenants, Conditions and Restrictions of The Dominion" ("the Declaration"). The Declaration, by its terms, applies to all twenty-two lots in the subdivision. Its easements, covenants and restrictions run with the land. Among other provisions, the Declaration created a covenant for maintenance assessments. The Declaration established that until January 1, 1990, the maximum annual assessment (or dues) would be $250.00. A mechanism for increasing the annual assessment was established, as was a mechanism for collecting special assessments for capital improvements.

In its preamble, the Declaration provides for formation of a home owners association. Every purchaser of a lot within the subdivision becomes a member of the Association and, by virtue of purchasing the land subject to the deed restrictions, is deemed to have agreed to pay certain charges to the Association.

By early 1993, Weatherstone had sold all but two of the subdivision's twenty-two platted lots. Donald and Elizabeth Martin, the appellants in this case, purchased lots 14 and 15 in the Dominion, receiving title by deed dated July 8, 1992. They also purchased lot 13, acquiring title by deed dated September 28, 1992. During the initial period of the development, Weatherstone took care of the maintenance and care of the common areas at its own expense. No annual assessments or other assessments were imposed or collected in any calendar year prior to 1993. Weatherstone requested that the owners organize the Association and cause it to begin functioning as contemplated by the Declaration.

The Homeowners Association was duly formed under the terms of the Declaration in April, 1993. The Association notified all lot owners by mail that it intended to have its first meeting on May 20, 1993. The first meeting of the Association was held on May 20, 1993, with owners of fifteen of the twenty-two lots in attendance. At this first meeting, the Association imposed a $250.00 per lot annual assessment. The Association subsequently sent copies of the minutes of this meeting to the Martins in a letter dated May 28, 1993. This letter informed all lot owners that the dues were payable by July 1, 1993. The Association never received payment of the 1993 dues from the Martins for the three lots they owned. The Association consequently recorded a lien for the 1993 annual assessment against the Martins' three lots.

At a special meeting on November 18, 1993, due to some vandalism and other increased costs in the common areas, the Association increased the annual assessment to $500.00 per lot and imposed two special assessments (one for capital improvements and one for non-capital improvements) of $130.00 per lot and $145.00 per lot. All lot owners were informed of the meeting in advance. Copies of the minutes were subsequently mailed to all members of the Association. The Martins did not pay any of the 1993 assessments. The next two years, the Association mailed reminder letters as to the annual assessments established at the 1993 meeting. The Martins also did not pay the annual assessments for 1994 or 1995. The Association recorded liens for the assessments against the Martins' three lots.

The Martins did not take an active part in the association, did not appear for any meetings, and lodged no objection to the establishment of the assessments. Informal attempts to collect from the Martins also failed to generate any response or objection. The Association filed suit against the Martins on July 3, 1995, seeking to collect the unpaid assessments. On September 25, 1995, the Association filed a motion for summary judgment seeking to collect: (1) the 1993 annual assessment; (2) the 1993 special assessments; (3) the 1994 annual assessment; (4) the 1995 annual assessment; and (5) attorneys' fees and costs. On May 6, 1996, the Martins also filed a motion for summary judgment against the Association. In that motion, they incorporated the "Statement of Uncontroverted Facts" found in the Association's motion for summary judgment, without admitting the truth of the statements. On September 6, 1996, the trial court granted the Association's motion for summary judgment as to: (1) the 1993 annual assessment; (2) the 1993 special assessment for capital improvements; (3) the 1994 annual assessment; (4) the 1995 annual assessment; and (5) attorneys' fees and costs. At the same time, the trial court denied the Association's motion and sustained the Martins' motion as to the 1993 special assessment for non-capital improvements. The court entered judgment for the Association in the amount of $13,080.00. Of this amount, $7,500 was for attorney's fees. The total amount was allocated among the three lots as continuing liens. The Martins appeal.

## APPEALABILITY OF THE DENIAL OF A MOTION FOR SUMMARY JUDGMENT

In their appeal, the Martins present two points. Point I states as follows:

I. The trial court erred in not sustaining Appellants' Motion for Summary Judgment because the trial court incorrectly interpreted the restrictive covenants in the document entitled, "Declaration of Covenants, Conditions and Restrictions" in that the trial court failed to strictly construe the "Declaration of Covenants, Conditions and Restrictions."

A denial of a motion for summary judgment is not an appealable order. In *Parker v. Wallace,* 431 S.W.2d 136, 137–38 (Mo.1968), the Missouri Supreme Court specifically held that the court's action in denying a motion for summary judgment was not an appealable order. In that case, which was a tort action, the plaintiff's initial point on appeal contended that the trial court erred in failing to grant plaintiff's motion for summary judgment. Although the court reversed the judgment on other grounds, the court held unequivocally that denial of motions for summary judgment are not appealable. *Id.* at 137. This rule applies even though judgment was entered in the trial court, and the judgment itself was final for purposes of appeal. *Id.* In their reply brief, the Martins rely on language in *Boatmen's Trust Co. v. Conklin,* 888 S.W.2d 347, 350 (Mo.App.1994). In that case, while acknowledging the rule that there is no appeal from the denial of a motion for summary judgment, the Eastern District of this Court nevertheless allowed review, "[t]o protect the substantial rights of the parties and to avoid an injustice . . . ." Perhaps the court viewed the matter as merely a variation of the traditional rule that procedural defects may be overlooked where necessary to prevent manifest injustice. See Rule 84.13(c). We also, like the Eastern District of this court in *Conklin,* would be inclined to overlook the procedural defect if there were any indication here that review is necessary to prevent a manifest injustice. Here, however, the Martins' contentions on appeal are without merit. The Association was properly formed according to law, and at each step the Association has taken pains to comply with the legal formalities necessary to establish lawful assessments.[1] The Association's officers have also attempted in good faith to see that the Martins were duly notified of all Association meetings. The Martins, in response to the Association's claims, offer highly technical arguments based upon a misreading of the

---

1. Because the Martins stipulated, for purposes of the motions for summary judgment, to the statement of facts developed by the Association, the Martins are bound by the facts set forth therein on this appeal.

declarations and by-laws. One argument with colorable substance is the argument that the assessments are not enforceable because the Declaration required assessments to be adopted by the directors of the Association, and not by the membership. However, it is not clear from a reading of the declarations that *only* the directors can set the assessments. Moreover, this argument lacks an appeal to equity. This is a small association of less than 20 owners. The directors work closely with the rest of the Association members, and it is clear that the directors recommended the amount of the assessments and approved the same. In sum, it is difficult to see how any miscarriage of justice would flow from affirming the trial court. The Martins have not argued that the assessments are inordinately high for this exclusive subdivision, nor have they argued that they were not aware of the restrictions when they bought the lots, or that they have been deceived in any way. They present no moral justification for their refusal to pay the assessments. Consequently, we decline review of Point I.

## ATTORNEYS' FEE AWARD

Point II, although also inartfully drawn, is a challenge to the award of attorney fees to the Association. The appellants claim that the trial court erred in awarding attorneys' fees because the agreement between the Association and its attorney called for compensation based upon a percentage of net recovery and not for compensation based upon an hourly or reasonable rate.

The Declaration allows for costs associated with collection and reasonable attorney fees. The Association and its attorney have an agreement wherein the attorney will be compensated at a rate of 40% of net recovery. The amount awarded by the trial court exceeds 40% of net recovery. The trial court found:

That Plaintiff's attorney has expended substantial time and effort in pursuing the enforcement of Defendants' legal obligations to the Plaintiff arising out of De-

fendants' non-payment of the assessments aforesaid, which time and effort has been necessitated by the actions of Defendants in ignoring and failing to respond to the notices, requests and demands for the payment of such assessments and the Defendants' failure and refusal to pay the same; the numerous assertions, defenses, arguments and positions which Defendants have argued in an attempt to avoid their legal obligations to the Plaintiff; and the extent to which Plaintiff's counsel has been required to go to respond to Defendants' numerous arguments and that reasonable attorney's fees in the premises are hereby determined in the amount of $7,500 which is the personal obligation of the Defendants to the Plaintiff, which fees, for purposes of Plaintiff's continuing assessment lien as provided in the Declaration, are to be allocated equally between the Lots involved and added to and become part of the assessments aforesaid.

■■■ Of course, the Association's right to recover attorney's fees is not limited by the contingent fee agreement between the Association and its attorney. The Martins were not a party to the agreement, and the private relationship between the Association and counsel is of no materiality as to an award against the Martins. A reasonable fee may be awarded regardless of any agreement of the Association with counsel. *See O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 71 (Mo. banc 1989). The trial court is considered an expert on the question of attorney fees. *Roberds v. Sweitzer*, 733 S.W.2d 444, 447 (Mo. banc 1987). "Moreover, in the absence of contrary evidence, the trial court is presumed to know the character of services rendered in duration, zeal and ability, and to know the value of them according to custom, place, and circumstance." *Roberts v. McNary*, 636 S.W.2d 332, 338 (Mo. banc 1982).[2] We will not disturb the award of the trial court absent a clear abuse of judicial discretion. *Id.* That is, the award will not be reversed unless it was arbitrarily arrived at or is so unreasonable that it indicates indif-

---

**2.** *Roberts* was expressly overruled on the totally unrelated subject of whether county fee increases were subject to the Hancock Amendment in *Kel-* *ler v. Marion County Ambulance District*, 820 S.W.2d 301, 304–05 (Mo. banc 1991).

ference or an absence of proper consideration. *Id.* We see no indication that the trial court abused its discretion in the instant case.

Appellants cite *Nangle v. Brockman,* 845 S.W.2d 619, 620 (Mo.App.1992), for the proposition that, "[w]here an express, contingent fee agreement exists between the parties, the attorney's recovery of fees must lie on the contract and not in quantum meruit unless the attorney was discharged prior to such performance that would give rise to the obligation to pay the contingent fee." *Nangle* was a case where an attorney sued a former client pursuant to a contingency fee agreement. The case is not germane to the issue presented here.

The trial court did not abuse its discretion in making the award of attorney's fees. The trial court judgment should be affirmed.

## MOTIONS FOR ATTORNEYS' FEES ON APPEAL

The Association has also filed two motions that were taken with the case. The first motion, filed on March 12, 1997, asks that the Court award additional attorney fees as additional assessments against the Martins' subdivision lots, that this Court finds that have been incurred by the Association between the time of this Court's final ruling and the trial court's order allowing fees and costs. In a later motion, filed on March 31, 1997, the Association asks this court to award additional costs associated with the collection of the assessments against the Martins' lots.

■ This court has the authority to allow and fix the amount of attorneys' fees on appeal. *Knopke v. Knopke,* 837 S.W.2d 907, 924 (Mo.App.1992). Courts are considered experts on the subject of attorneys' fees and this expertise extends to the value of appellate services. *Heshion Motors, Inc. v. Western Intern. Hotels,* 600 S.W.2d 526, 541 (Mo. App.1980). An award of attorneys' fees may be allowed on appeal if the fees are based upon a written agreement that is the subject of the issues that are presented in the appeal. *American Nat. Ins. Co. v. Noble Communications Co.,* 936 S.W.2d 124, 134 (Mo. App.1996).

■ In this case, attorney fees and the costs of collection of assessments are provided for in the Declaration:

### ARTICLE VII

### COVENANT FOR MAINTENANCE ASSESSMENTS

*Section 1.   Creation of the Lien and Personal Obligation of Assessments.*   The Declarant, for each Lot owned within the property, hereby covenants, and each Owner of any Lot by acceptance of a deed therefor, whether of not it shall be so expressed in any deed or other conveyance, is deemed to covenant and agree to pay the Association: (1) annual assessments or charges, and (2) special assessments for capital improvements, such assessment to be fixed, established and collected from time to time as hereinafter provided.   The annual and special assessments, together with such interest thereon and such costs of collection thereof, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each assessment is made. Each such assessment, together with such interests, costs and reasonable attorney's fees shall also be the personal obligation of the person or persons who were the Owner or Owners of such property at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

. . . .

*Section 7.   Effect of Nonpayment of Assessments: Remedies of the Association.* Any assessments which are not paid when due shall be delinquent.   It the assessment is not paid within thirty (30) days after the due date, the assessment shall bear interest from the date of delinquency at the rate of Ten per cent (10%) per annum. The Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the property, and interest, costs and reasonable attorney's fees of any such action

shall be added to the amount of such assessment. No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Lot.

The Association is entitled to reasonable attorney fees and costs of collection under the Declaration. We grant the motions as to attorneys' fees on appeal in the amount of $2,400.00.

## CONCLUSION

The trial court's judgment is affirmed. The court also hereby grants the Association's motions seeking attorney fees and costs on appeal. The motions are granted in the amount of $2,400.00. Because the Declaration provided for the assessments and attorney's fees and costs to constitute a lien on the property, the award of attorney's fees and costs in the amount of $2,400.00 shall be allocated among the three lots and be a further lien on the property in accordance with the terms of the Declaration of Covenants, Conditions and Restrictions of the Dominion. In view of the fact that recovery of costs is allowed in our grant of the Association's motion, no costs are assessed under Rule 84.18.

BERREY, P.J., and EDWIN H. SMITH, J., concur.