**SUPERIOR INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**UNIVERSAL UNDERWRITERS IN-SURANCE COMPANY, Cara Lee Roberts, Thomas Brandon Roberts, and Kelly Marie Roberts, Special Conservator, Defendants–Respondents.**

No. 24101.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 19, 2001.

David W. Hall, Jr., Russell & Hall, L.L.P., Springfield, Richard L. Rollings, Jr., Ozark, for appellant.

Virginia L. Fry, Kevin L. Austin, Blackwell Sanders Peper Martin LLP, Robert W. Stillings, Springfield, for respondents.

JOHN E. PARRISH, Judge.

Superior Insurance Co. (Superior) appeals the dismissal of its two-count petition for damages arising from uninsured motorist settlements of claims for personal injuries asserted by Cara Lee Roberts and by Kelly Marie Roberts on behalf of Thomas Brandon Roberts.[1] Count I sought contribution from Universal Underwriters Insurance Co. (Universal) for payments Superior made in settlement of uninsured motorist claims. Count II sought damages from Cara and Thomas (and his special conservator Kelly Marie Roberts) as reimbursement to Superior for funds paid pursuant to certain Release, Trust and Settlement Agreements executed by Cara and Thomas, and on his behalf, in settlement of their uninsured motorists claims. This court reverses the dismissal of Count I and Count II and remands.

Both counts of Superior's petition were dismissed for failure to state a cause of action. "When reviewing the grant of a motion to dismiss a petition, all facts alleged in the petition are deemed true and the plaintiff is given the benefit of every reasonable intendment." *Magee v. Blue Ridge Professional Bldg. Co., Inc.,* 821 S.W.2d 839, 842 (Mo. banc 1991). Thus, for purposes of this appeal the facts pleaded in Superior's petition are accepted as true.

Chad Campbell was employed by Reliable Chevrolet, Inc. (Reliable). On July 21,

1. Kelly Marie Roberts is Thomas Roberts' wife. She acted on Thomas' behalf in the capacity of his special conservator pursuant to § 475.092, RSMo 1994.

1997, he was driving a 1997 Chevrolet Camaro automobile that belonged to Reliable. Cara and Thomas were riding with Campbell. The car was involved in a one-vehicle accident. Cara and Thomas were injured and made formal demands on Reliable and its insurer, Universal, for $1,000,000 for injuries they received in the accident.

Universal had an automobile insurance policy in effect at the time of the accident that insured Reliable. It provided uninsured motorist coverage with a policy limit of $2,000,000 per occurrence. Universal filed an action for declaratory judgment in the Circuit Court of Greene County, case No. 198CC4175. Universal stated in its petition for declaratory judgment that at the time of the accident, Chad Campbell was not acting within the scope of his employment by Reliable; that he was not using the automobile that was involved in the accident with express or implied permission of Reliable; and that he was not authorized by Reliable to use the automobile. Universal claimed Campbell was not an insured under its policy that insured Reliable.

Tom Roberts is the father of Cara and Thomas. At the time of the accident, he had an automobile insurance policy that was issued in the state of California by Superior. As a result of Universal's position that its policy did not cover the vehicle that was involved in the accident, Cara and Thomas were covered under the uninsured motorist coverage provided by Superior. There was total uninsured motorist coverage under Superior's policy of $60,000 per person and $120,000 per accident. Superior settled with Cara and with Thomas, through his special conservator, for the personal injuries each sustained in the accident. Superior paid limits of $60,000 to

Cara and $60,000 to Thomas' special conservator on his behalf.

Settlement agreements were executed by Cara, Thomas, and Thomas' special conservator. The agreements are dated April 12, 1999. Each recites that the vehicle in which Cara and Thomas were riding at the time of the accident was being driven by Chadwick Reese Campbell; that the vehicle was "owned by Reliable Chevrolet, Inc. and/or Van Enterprises, Inc., which had insurance with [Universal], which has denied any liability coverage for the actions of Mr. Campbell and therefore because of the denial of liability coverage the vehicle was an uninsured automobile under [Superior's] policy." The agreements provide that the respective injured parties release all claims against Superior "for and in the consideration of the sum of Sixty Thousand Dollars ($60,000.00)." They then state:

> For and in the consideration of the aforesaid and to the extent of the payments of Sixty Thousand Dollars ($60,000.00) made hereunder, the undersigned agree to hold in trust and for the benefit of [Superior] all rights of recovery which [Cara Lee Roberts, either Kelly Marie Roberts as Special conservator or Thomas Brandon Roberts] shall have against any person or organization legally liable for the injuries sustained by [Cara Lee Roberts or Thomas Brandon Roberts] and the undersigned[2] hereby specifically assign to [Superior] all proceeds of any settlement or judgment against such persons or organizations up to the amount of Sixty Thousand Dollars ($60,000.00). That the amount held in trust and the specific assignment will be made to [Superior] from any judgment or settlement pro-

---

**2.** The agreement with and on behalf of Thomas includes the language "Special Conserva-

tor Kelly Marie Roberts and Thomas Brandon Roberts" at this place in the agreement.

ceeds and be paid over to [Superior], first before any reduction or deduction for expenses, court costs and attorney fees.

The agreements authorize Superior to exercise subrogation rights in the names of Cara Lee Roberts and Special Conservator Kelly Marie Roberts or Thomas Brandon Roberts against any person or organization for purposes of recovering the amounts paid in accordance with the respective agreements.

The agreements state that "[Superior] expressly reserves the right to proceed against any and all persons or organizations including, but not limited to [Universal], Van Enterprises, Inc., Reliable Chevrolet, Inc., for the damages as a result of the injuries sustained by [Cara Lee Roberts or Thomas Brandon Roberts]."

After Cara and Thomas settled uninsured motorist claims with Superior, they settled uninsured motorist claims with Universal. The settlements with Universal were effected by agreements dated November 9, 1999. Universal paid Cara $213,700. Universal paid Thomas, individually, and Kelly Roberts, as his next friend, $174,300. It obtained releases of Chad Campbell, Van Enterprises, Inc., Reliable Chevrolet, Inc., Universal and Superior in exchange for its payments.

■ Point I is directed to the trial court's dismissal of Count I of Superior's petition. Point I contends the trial court erred in dismissing Count I, Superior's claim against Universal. Superior argues that Count I of the petition "stated a cause of action for contribution between uninsured motorist insurers after settlements resulted in releases of both uninsured motorist insurers."

Superior's brief summarizes the allegations of Count I of its petition as follows:

The facts alleged in Count I of the Petition, reduced to the barest essentials, are: (1) Defendants Cara and Thomas were injured in an accident involving an uninsured motorist; (2) Plaintiff Superior subsequently paid its policy limits of $120,000.00 to Defendants Cara, Thomas and Kelly [Thomas' special conservator] in settlement of those Defendants' uninsured motorist claims under Plaintiff's Policy; and (3) Defendant Universal subsequently paid Defendants Cara, Thomas and Kelly the total amount of $388,000.00 in settlement of those Defendants' uninsured motorist claims under Defendant Universal's Policy, which had a limit of liability of $2,000,000.00.

Superior suggests, based on these facts, that "the question presented is whether one uninsured motorist insurer is entitled to contribution from another uninsured motorist insurer when each insurer settled separately with the insured."

*State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.*, 671 S.W.2d 276 (Mo. banc 1984), addressed the question of whether one uninsured motorist insurer could maintain an action for contribution from another uninsured motorist insurer in circumstances in which the carriers were jointly liable. In *State Farm* two carriers were liable for personal injuries sustained by a passenger in a motor vehicle by reason of uninsured motorist coverage included in policies those carriers had issued. State Farm had issued a policy with a $10,000 limit for uninsured motorist coverage. MFA had two policies of automobile insurance with uninsured motorist coverage. Each MFA policy had a $10,000 policy limit. Thus, total uninsured motorist insurance of $30,000 was available. State Farm settled with the injured passenger for $9,700. State Farm then brought the action that sought the declaration that MFA was required to contribute two-

thirds of the settlement amount paid by State Farm.

*State Farm* held that one uninsured motorist insurer could maintain an action against another uninsured motorist insurer for contribution. It declared, however, that "[a]n uninsured motorist carrier suing another for contribution must first show that it has obtained a release which discharges the defendant carrier from liability." *Id.* at 279. It states:

Even so, the right to contribution is not absolute. The settling carrier must meet a test of reasonableness. In determining this issue the trier of the fact may consider the proportion of the total coverage afforded by the settling carrier, the presence or absence of notice to other carriers, and the discussions among the carriers, in addition to the evaluation of liability and damage issues.

If the reasonableness test is met, then the defendant carrier is not necessarily entitled to an independent determination of its liability to the claimant. Under Missouri law, which expresses a strong public policy, situations will often arise in which different carriers are jointly liable for the same uninsured motorist coverage. We agree with the observations of the Supreme Court of Florida in *Sellers v. United States Fidelity and Guaranty Company*, [185 So.2d 689 (Fla.1966) ], about the problem faced by accident victims in negotiating with several carriers.[3] Settlements are favored in the law and we opt for a solution which encourages the insurers to work together in trying to achieve settlement. [Footnote omitted.] *Id.*

*State Farm* points to the statutory requirement that uninsured motorist coverage is required in every Missouri automobile liability policy. *See* § 379.203, RSMo 2000. It acknowledged "[t]here are often, . . . several layers, or 'stacks,' of coverage which must respond to the same injury," concluding "[i]f the various insurers operate in complete isolation, the policy of the law in providing protection to the victims of uninsured motorists will be impeded." *Id.* at 278.

The facts of this case differ from the facts in *State Farm*. In this case, both carriers independently settled uninsured motorist claims. This occurred after Universal denied coverage under its automobile insurance policy. Superior settled for policy limits April 12, 1999. Universal settled November 9, 1999, for amounts less than its policy limits. Superior paid $120,000. Universal paid $388,000. Thus, total uninsured motorist benefits of $508,000 were paid. If that amount were prorated based on policy limits, Superior's share would be $28,752.80, i.e., 5.66% of $508,000.[4] Universal's share would be $479,247.20, i.e., 94.34% of $508,000. If Superior is entitled to contribution, it would receive $91,247.20 ($120,000 paid to claimants less the prorated amount of

**3.** *Sellers* emphasized that an insured protected by multiple policies with uninsured motorist coverage should not be delayed or frustrated in effecting settlement by having to pursue his or her claim of loss against all of the insurers jointly. It held such an insured could "proceed against any one or more of them, but in any event he shall not be entitled to recover from all of them more than the amount of his loss from bodily injury caused by an uninsured motorist and, of course, his recovery from any one of them shall be within the limit of the particular policy." 185 So.2d at 692.

**4.** The 5.66% is calculated by dividing Superior's policy limits of $120,000 by $2,120,000, the total policy limits of both carriers (Superior's $120,000 plus Universal's $2,000,000). Universal's share would be 94.34%, calculated by dividing its policy limits of $2,000,000 by the total policy limits of $2,120,000.

$28,752.80 for which Superior would be responsible) from Universal.

Universal's argument in support of the trial court's dismissal of Superior's action for contribution relies on *State Farm's* declaration that for one uninsured motorist to obtain contribution from another, there must be a showing "that it has obtained a release which discharges the defendant carrier from liability." 671 S.W.2d at 279. Universal further suggests that Superior's petition failed to state a cause of action because it did not allege that Superior obtained a reasonable settlement in favor of Universal.

This court does not agree with Universal's conclusion that under no circumstance can one jointly liable uninsured motorist insurer maintain an action for contribution against another without having first obtained a release that discharged both insurers from liability. In *State Farm,* the respective policy limits of the jointly liable insurers was not disproportionate; one carrier had one policy with $10,000 policy limits and the other two policies each of which had $10,000 policy limits. In *State Farm,* the settlement of the claim against both insurers was for an amount less than the policy limits of uninsured motorist coverage provided by any one of the policies that provided coverage. *State Farm* did not involve circumstances in which the total amount paid in settlement exceeded the liability limits of the insurer that paid the settlement amount and sought contribution.

*State Farm* established a right of an uninsured motorist carrier to maintain an action against another uninsured motorist carrier in instances in which both carriers are liable for a common loss. The right to maintain an action for contribution is based on Missouri's policy of providing protection to victims of uninsured motorists. This court perceives no reason why that policy should not extend to the facts pleaded by Superior provided the reasonableness test *State Farm* recognized is met.

There can be circumstances in which it would be unreasonable to require that the first jointly liable uninsured motorist insurer that settles with a claimant to obtain a release of all insurers in order to maintain an action for contribution. Standards or rules that are stated with particularity in fact intensive cases must be considered based on the facts of the case in which they were imposed. *See, e.g., Sprung v. Negwer Materials, Inc.,* 775 S.W.2d 97, 100 (Mo. banc 1989); *Kirk v. Mercy Hosp. Tri–County,* 851 S.W.2d 617, 622 (Mo.App. 1993). A requirement to obtain releases of jointly liable uninsured motorist insurers in order to maintain an action for contribution would not assist insureds in instances in which the uninsured motorist insurance policies have disproportionate policy limits. Such a requirement would more likely discourage settlements. This court declines to impose that requirement under the facts of this case.

■ Likewise, this court does not agree with Universal's assessment that Superior did not state a cause of action because it did not allege the settlement in the case was reasonable.

The Missouri rules of civil procedure require fact pleading. . . . The goal of fact pleading is the quick, efficient, and fair resolution of disputes. Fact pleading identifies, narrows and defines the issues so that the trial court and the parties know what issues are to be tried, what discovery is necessary, and what evidence may be admitted at trial.

*State ex rel. Harvey v. Wells,* 955 S.W.2d 546, 547 (Mo. banc 1997). *See* Rule 55.05. Count I of Superior's petition sets forth the amounts paid in settlement by each

carrier. Whether the amounts paid by it meet a reasonable test for purposes of Superior's claim for contribution against Universal is an ultimate conclusion to be made by the trial court. The statement of amounts paid by the respective jointly liable uninsured motorist insurers, together with the statement of the amount demanded by the injured parties, suffices to place the question of reasonableness in issue.

Superior settled its claim by paying its policy limits to the accident victims. Subsequently, Universal settled the victims' claims against its policy of insurance. Superior's policy limits were significantly less than the total amount of the settlements effected from both uninsured motorist insurers. Because of the disparity in the amounts of policy limits, Superior was not in a position to negotiate a complete settlement so as to secure releases of liability for itself and Universal.

Absent a right of contribution from Universal, provided the settlements pass the test for reasonableness, Superior would realize a shortfall and Universal a windfall in the amount of $91,247.20 on the basis of a pro rata apportionment of the total policy limits for uninsured motorist coverage. If Missouri law sanctioned such a result, there would be no incentive for an insurer with lower policy limits to promptly settle its part of an uninsured motorist claim when another insurer is jointly liable and had significantly higher policy limits. There would be no incentive for uninsured motorist insurers with high policy limits to work with other insurers with lower policy limits to effect a prompt and complete settlement of claims for which they were jointly liable.

A similar assessment was made by the Eighth Circuit in applying Missouri law in *Gulf Ins. Co. v. American Family Mut.* *Ins. Co.*, 962 F.2d 834 (8th Cir.1992). In *Gulf,* two carriers, Gulf Insurance Co. (Gulf), and American Family Mutual Insurance Co. (American Family), were jointly liable for an uninsured motorist claim made by Holly Knox. Gulf admitted liability on Ms. Knox's claim. American Family refused to admit liability and refused to participate in settlement negotiations. Gulf settled the claim. It did not include American Family on the release from liability it secured from Ms. Knox as part of the settlement. Gulf then sought contribution from American Family. The district court held Gulf was entitled to contribution from American Family. The Eighth Circuit affirmed. It explained:

> The district court stated that American Family "was not discharged from liability as part of the settlement between [Gulf] and Holly Knox because [American Family] refused to admit any liability." [*Gulf Ins. Co. v. American Family Mut. Ins. Co.,*] 768 F.Supp. [272] at 274 [ (E.D.Mo.1991) ]. The district court then held that policy considerations of Missouri uninsured motorist law prevented American Family from benefiting from its recalcitrance:

> > Denying contribution on this ground would mean that by refusing to acknowledge its liability an insurance company could avoid contribution in situations where its policy provided coverage. Such a result would not only run counter to the policy supporting settlement but, in this case, would be in conflict with the underlying policy of the Missouri uninsured motorist protection laws. Furthermore, as in all cases of contribution, if Holly Knox later receives a judgment from defendant, the settlement in this case will be a setoff to that later judgment. Mo.Rev.Stat. § 537.060 (1986).[5] Thus,

**5.** § 537.060, RSMo 2000, is unchanged from what appears in the 1986 revision.

although the language of *State Farm v. MFA [supra]* is in terms of a mandatory release of the defendant, the Court finds that, in this case, defendant has waived that requirement by its actions.

768 F.Supp. at 274–75.

962 F.2d at 835–36. The Eighth Circuit held, "[T]he district court did not err in holding that American Family waived the requirements of a release in this contribution action and in holding American Family liable under Missouri law." *Id.* at 836.

The release Universal obtained from Cara and from Thomas and his special conservator, released any and all claims against Universal, its insureds, the driver of the automobile in which Cara and Thomas were riding at the time of the accident, and Superior. Thus, at the time Superior asserted its claim for contribution, both of the uninsured motorist insurers that had joint liability had been released from claims of Cara and Thomas. This court holds that, under these circumstances, Superior has a right to seek contribution from Universal. To do otherwise would discourage prompt payment of claims by uninsured motorist insurers in situations such as exist in this case, i.e., situations in which there would be joint liability for uninsured motorist claims between insurers with disproportionate policy limits. To hold otherwise would be inconsistent with the underlying policy of Missouri's uninsured motorist protection laws. There would be little, if any, incentive for the insurer with high policy limits to settle before a jointly liable carrier with lower policy limits settled. Likewise, with no practical ability to settle and obtain a release of all jointly liable uninsured motorist carriers, there would be little, if any, incentive for the carrier with lower policy limits to settle. Point I is granted.

■ Point II is directed to the trial court dismissing Count II of Superior's petition for failure to state a cause of action. It contends the trial court erred in dismissing Count II against Cara, Thomas and Thomas' special conservator, Kelly Marie Roberts, in that Count II "stated a cause of action for reimbursement (a) because the tortfeasor was no longer an uninsured motorist, (b) from the proceeds of the settlement with the tortfeasor, and (c) because [the Roberts] failed to obtain consent to the settlement with the tortfeasor."

Cara and Thomas suggest Superior's point relied on does not comply with requirements of Rule 84.04(d) and, therefore, preserves nothing for appellate review. Rule 84.04(d) requires, where an appellate court is reviewing a decision of a trial court, that each point:

> (A) identify the trial court ruling or action that the appellant challenges;
>
> (B) state concisely the legal reasons for the appellant's claim of reversible error; and
>
> (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

Rule 84.04(d)(1). "The requirements of Rule 84.04(d) are mandatory." *Carroll v. AAA Bail Bonds*, 6 S.W.3d 215, 217 (Mo. App.1999).

■ Arguably, Point II does not comply with Rule 84.04(d) in that it does not concisely state legal reasons for Superior's claim of reversible error. Point II does not identify the theory of recovery on which Count II is founded. It, therefore, provides no frame on which to explain in summary fashion why the facts pleaded support a claim of reversible error. Point II asserts that Count II "state[s] a cause of action for reimbursement." It does not identify what theory of recovery exists

that would permit Superior to be reimbursed. Nevertheless, "[a]ppellate courts ... do not generally exercise discretion to disregard a defective point unless the defective point impedes disposition of the case on its merits. *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo. banc 1997). A brief impedes disposition on the merits if it fails to give notice to the other parties and to the appellate court of the basis for the claimed error. *Id.*" *Bolz v. Hatfield,* 41 S.W.3d 566, 571 (Mo.App.2001). A reading of Count II of Superior's petition affords the obvious conclusion that Superior intends to plead an action for breach of contract based on the "Release and Trust Agreement" it entered into with both Cara and with Thomas and his special conservator.

The elements that must be proven in order to recover for breach of contract are "(1) existence of an enforceable contract between [the parties to the action], (2) that mutual obligations had arisen under its terms, (3) that [the party or parties

being sued] had not performed obligations imposed by the contract and (4) that [the party seeking recovery] was thereby damaged." *Trimble v. Pracna,* 51 S.W.3d 481, 506 (Mo.App.2001). The facts alleged in Count II of Superior's petition sufficiently state these elements. A cause of action for breach of contract was pleaded. The trial court erred in granting Superior's motion to dismiss Count II for failure to state a cause of action. Point II is granted.

The judgment is reversed as to both Count I and Count II. The case is remanded for further proceedings.

GARRISON, P.J., and PREWITT, J., concur.