Donald L. McCLAIN and Mary L. McClain, Plaintiffs/Appellants,

v.

Raymond PAPKA and Jean Papka, Defendants/Respondents.

No. ED 81182.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 1, 2003.

Rehearing Denied May 27, 2003.

Charles W. Niedner, St. Charles, MO, for appellant.

Dennis R. Chassaniol, St. Charles, MO, for respondent.

WILLIAM H. CRANDALL, JR., Presiding Judge.

Plaintiffs, Donald L. McClain and Mary L. McClain, appeal from the judgment of the trial court in their favor on their breach of contract claim and in favor of defendants, Raymond Papka and Jean Papka, on plaintiffs' fraud and negligent misrepresentation claims, all of which claims arose from the sale of defendants' residence to plaintiffs. We affirm.

In December 1998, plaintiffs, Donald L. and Mary L. McClain (buyers), entered into a residential sale contract with defendants, Raymond and Jean Papka (sellers), for the sale of sellers' home. The parties were represented by the same real estate agent. In October 1998, sellers executed a disclosure statement and completed the section entitled "TERMITES/WOOD DESTROYING INSECTS, PESTS," as follows:

(a) Are you aware of any termites/wood destroying insects, or pests affecting the property? *No*

(b) Are you aware of any uncorrected damage to the property caused by termites/wood destroying insects, pests? *No*

(c) Is your property currently under a warranty contract by a licensed pest control company? *Yes*

(d) Are you aware of any termite/pest control reports for or treatments of the property? [*No response*]

Explain any "yes" answers you gave in this section [*No response*]

Sellers also completed the section entitled "BASEMENT AND CRAWL SPACE (Complete only if applicable)," as follows:

(a) Are you aware of any dampness, water accumulation or leakage, in the basement or crawl space? *Yes* If yes, describe in detail: *Some leakage between basement floor & side walls. Very seldom.*

(b) Are you aware of any repairs or other attempts to control any water or dampness problem in the basement or crawl space? *Yes.* If "yes," describe the location, extent, date and name of the person/company who did the repair or control effort: *Underground drain pipe on west end of home out to street. Down spout extensions on east end of home.*

Prior to closing, buyers telephoned the exterminating company to check if sellers had maintained the termite warranty on the home. The company informed them that the warranty had expired because sellers had not paid the renewal fee in June 1998. The company also informed buyers that it had treated an area under the window in the exterior garage wall for live termites in the past, and that the termites were exterminated. Sellers confirmed the accuracy of this report and the real estate agent informed buyers that sellers claimed there was no termite damage to the house. Sellers told the real estate agent that buyers could open up the wall in the garage to check for termite damage, but the agent advised buyers not to do so because sellers had not provided written permission. Prior to closing, buyers negotiated another service agreement with a different exterminating company and received a credit at closing for the cost of the new agreement. Also, two weeks before trial but three years after closing, plaintiffs discovered a 1989 written report (consisting of a drawing with an X marking two areas) from the exterminating compa-

ny indicating evidence of termites not only under the window of the exterior garage wall but also in the corner where the garage wall met the interior kitchen wall. Sellers denied ever seeing this report.

Buyers visited the house three to four times before closing and visually inspected the house, although sellers' personal belongings sometimes blocked their view. Mr. McClain was in the home maintenance and repair business. An independent building inspector hired by buyers also inspected the house and gave a written report to buyers, but no evidence was presented about the report at trial and it was not included in the record on appeal. When buyers inspected the house, they noticed a crack in the back foundation wall of the basement and a water stain on the floor under it. Buyers also noticed a damp smell in the utility room of the basement. When buyers inquired about this condition, the real estate agent reported that sellers stated that the crack in question never leaked and that the water stain was from a washing machine. When buyers raised questions about another crack in the front basement foundation wall, the agent reported that sellers stated that the crack had leaked in the past but that they had remedied the leak by landscaping.

On January 15, 1999, the parties closed on the contract for the sale of the house. The closing statement indicated a $1,600.00 credit for "building and termite resolution." When buyers began remodeling shortly after closing, they found extensive termite damage in the wall between the kitchen and garage, a location different from that which sellers indicated had been treated for termite damage. In addition, when there was a substantial amount of rain, water came into the basement through both cracks in the foundation. Buyers also discovered water damage from a leak in the roof at the location of a vent stack. Aluminum foil has been placed at the top of the vent stack, ostensibly to divert the water. As a result of the leak, there was damage to the kitchen and basement walls. The buyers also discovered mold and mildew when they pulled off the paneling and took up the carpeting and tile in the basement. The leak also made it necessary to replace all of the plywood when buyers replaced the roof, because the plywood was damaged and displayed a "sponginess." Buyers viewed the $1,600.00 credit at time of closing as a contribution to the cost of the new roof; but at the time they settled on that figure, they were not aware of the extensive damage to the plywood underneath the shingles.

In March 1999, buyers brought the present action against sellers in a three-count petition. Count I was for breach of contract for sellers' failure to disclose the latent defects in the house and for failing to provide the termite warranty contract. Count II was for fraud and Count III was for negligent misrepresentation for sellers' representing that there were no latent defects and that a termite warranty contract was in effect. After a court-tried case, the trial court found in favor of buyers on their breach of contract claim. The court awarded damages in the amount of $1,194.33, which represented one-third of the amount necessary to fix the water damage caused by the leak by the vent stack (totalling $2,803.00), plus $260.00 that buyers spent to paint the area. It also awarded buyers $1,000.00 for their attorney's fees. The court found in favor of sellers on Counts II and III. The court dictated the reasons for its decision into the record. Buyers appeal.

In a court-tried case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support the judgment, it is against the

clear weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept all evidence and inferences favorable to the judgment, and disregard all contrary evidence and inferences. *Central Dist. Alarm, Inc. v. Hal-Tuc, Inc.*, 886 S.W.2d 210, 211 (Mo.App. E.D.1994). The trial court sits in the best position to judge the credibility of the witnesses. *VanBooven v. Smull*, 938 S.W.2d 324, 327 (Mo.App. W.D.1997).

In their first point, buyers contend that the trial court erred in finding that sellers were not liable for termite damage under any of the three counts in their petition. They argue that sellers knew of the prior infestation at the location in the wall between the garage and the kitchen, but did not disclose it. Buyers further argue that they did not waive any claim for termite damage anywhere in the house when they closed on the contract with the knowledge of the presence of termites at only one location in the house.

Two of buyers' counts (fraud and negligent misrepresentation) were based on sellers' failure to disclose the termite damage and the infestation in the wall between the garage and the kitchen. An essential element of both fraud and negligent misrepresentation is reliance on the representation and damage as a result of that reliance. *Sanders v. Ins. Co. of North America*, 42 S.W.3d 1, 9 (Mo.App. W.D. 2000). The failure to prove any one of the essential elements of either fraud or negligent misrepresentation is fatal to a claim dependent thereon. *Id.* The concept of fraud liability based upon nondisclosure couches reliance in terms of the availability of the information to the plaintiff and the plaintiff's diligence. *VanBooven*, 938 S.W.2d at 328. A plaintiff asserting fraud must show that the undisclosed information was beyond his or her reasonable reach and not discoverable in the exercise of reasonable diligence. *Id.* "[T]he modern trend is not to extend but to restrict the rule requiring diligence in persons to whom representations are made, and to condemn the falsehood of the person making the representation, rather than the credulity of the victim." *Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 62 (Mo.App. E.D. 1999). A person is entitled to rely on a representation (1) where he or she lacks equal facilities for learning the truth; (2) where the facts are peculiarly within the knowledge of the speaker and difficult for the hearer to ascertain; (3) where the representation relates to latent defects; (4) where it would be necessary to employ a third person to make an examination in order to discover the truth because of the hearer's ignorance and inexperience; and (5) where the employment of an expert would be required. *VanBooven*, 938 S.W.2d at 329. The right to rely on a representation is generally a question of fact. *Id.* at 328.

Here, the facts of this case do not support buyers' reliance. Buyers were aware of the presence of termites in the garage and made their own inquiry of the exterminating company, which confirmed the infestation, but only in the area by the garage window. Mr. McClain was in the home repair business himself and made a visual inspection of the garage. Sellers offered to let buyers open the garage wall to check for termite damage, but buyers did not do so when their real estate agent advised against it. With regard to the drawing by the exterminating company that indicated termite infestation by the kitchen wall, Mr. Papka testified that sellers were not aware of the report. Because buyers failed to present their own inspection report at trial, it can only be inferred that the report was not favorable to them. Furthermore, sellers did not engage in

active concealment of a non-observable condition. *But see VanBooven,* 938 S.W.2d at 328 (fraudulent nondisclosure found where sellers actively concealed pet damage to carpet by use of deodorizer thereon). Sellers did not know about the termites or the damage. *See Mobley v. Copeland,* 828 S.W.2d 717 (Mo.App.1992) (no fraudulent nondisclosure where sellers did not know that tingling sensation in swimming pool was from an electrical charge). Buyers were not entitled to rely on sellers' representations.

■ With regard to buyers' breach of contract claim against sellers because of the termite infestation and damage, the elements that must be proven in order to recover for breach of contract are (1) the existence of an enforceable contract between the parties, (2) mutual obligations under the terms of the contract, (3) one party's failure to perform the obligations imposed by the contract, and (4) the other party's thereby incurring damage. *Superior Ins. Co. v. Universal Underwriters Ins. Co.,* 62 S.W.3d 110, 118 (Mo.App. S.D. 2001). Here, sellers did perform their obligation to disclose, because they were not aware of either the termite infestation in the kitchen/garage wall or the termite damage. They even offered to let buyers open the wall to conduct their own investigation. The trial court did not err when it found that buyers failed to establish a breach of contract action with regard to seller's failure to disclose the termite damage. Buyers' first point is denied.

■ In their second point, buyers contend that the trial court erred in finding that sellers disclosed the water leaks through the cracks in the basement foundation walls. In the instant action, sellers answered a question in the disclosure statement, stating affirmatively that they were aware of dampness, water accumulation, or leakage in the basement. They then explained their answer by writing that there was some leakage "between basement floor and side walls," but that it was "very seldom." The court reasonably could have believed sellers' explanation that their use of the term "side walls" referred to the foundation walls of the basement. On the disclosure statement, sellers also described their attempts to control any water or dampness problem in the basement or crawl space through the installation of underground drain tiles and down spouts. Thus, buyers were informed that there was some leakage in the basement. Further, the court also found that Mr. McClain was not credible. He was in the home repair and maintenance business, he smelled dampness in the basement, he observed cracks in the foundation and inquired about them, he had ample opportunity to inspect the foundation, and he hired an independent inspector. The trial court did not err in finding that sellers disclosed the water leaks in the basement. Buyers' second point is denied.

■ In their third point, buyers challenge the trial court's award of damages in the amount of one-third of $2,803.00, the total cost to repair the water damage to the kitchen and the roof from the leak by the vent stack, plus $260.00, the cost of repainting. They allege that the amount of damages was not supported by the evidence.

Here, buyers' expert testified that the amount to repair the roof leak and water damage to the kitchen was $2,803.00. The trial court assessed damages at one-third that amount or $934.33, because it found that the expert's estimate involved replacing the entire roof. Buyers' own testimony was that he received an additional $1,600.00 credit for the roof at closing, some of which would have been applied to repair the roof by the vent. The court's award of damages was within the range of

the evidence. Buyers' third point is denied.

In their fourth point, buyers charge error in the trial court's award of only $1,000.00 in attorney's fees when they incurred $18,900.00 in attorney's fees. They argue that the sale contract contained a provision requiring the breaching party to indemnify the non-breaching party for their reasonable attorney's fees incurred by reason of the breach of the sale contract.

Missouri courts adhere to the "American rule," which states that, ordinarily, litigants must bear the expense of their own attorney's fees. *Lett v. City of St. Louis,* 24 S.W.3d 157, 162 (Mo.App. E.D.2000). One exception to the American Rule is where a contract allows a successful litigant to recover attorney's fees. Here, the sale contract permitted recovery.

The trial court is considered an expert on the question of attorney fees. *Dominion Home Owners Ass'n., Inc. v. Martin,* 953 S.W.2d 178, 182 (Mo.App. W.D.1997). In the absence of contrary evidence, the trial court is presumed to know the character of services rendered regarding duration, zeal and ability, and to know the value of them according to custom, place, and circumstance. *Id.* We will not disturb the award of the trial court absent a clear abuse of judicial discretion. *Id.* That is, the award will not be reversed unless it was arbitrarily arrived at or is so unreasonable that it indicates indifference or an absence of proper consideration. *Id.*

In the present action, we see no indication that the trial court abused its discretion. One important factor in determining reasonable attorney's fees is the amount involved or the result obtained. *O'Brien v. B.L.C. Ins. Co.,* 768 S.W.2d 64, 71 (Mo. banc 1989). Here, although buyers were the prevailing parties, they succeeded on only one of their claims-breach of contract because of the leak by the vent stack in the roof; and were awarded damages totaling $1,194.33. Attorney's fees were not warranted for services performed by buyers' counsel on the unsuccessful claims. Based on the actual damages recovered by buyers, we find no abuse of discretion. Buyers' fourth point is denied.

In their fifth point, buyers assert that they are entitled to a new trial because of the trial court's refusal to allow a recess for the first five hours of trial. They argue that they were prejudiced because they missed portions of the trial. Yet, the record is not adequate for us to review trial court's conduct and thus nothing is preserved for our review. Buyers' fifth point is denied.

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, J. and GLENN A. NORTON, J.: Concur.