**Glendora MARTIN, Plaintiff–Respondent,**

v.

**Charles REED and Lois Reed, Defendants–Appellants.**

No. 25978.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 29, 2004.

Joshua K. Roberts, Hazelrigg, Roberts, Easley & Kail, P.C., Springfield, for appellants.

Richard L. Schnake, Brian K. Asberry, Neale & Newman, L.L.P., Springfield, for respondent.

KENNETH W. SHRUM, Judge.

This is a suit over ownership and right to possession of farm real estate. Plaintiff sued to recover possession, whereon Defendants counterclaimed seeking specific performance of a written "contract for deed" and a declaratory judgment of the parties' rights under that contract.[1] After making credibility determinations adverse to Defendants, the trial court ruled Plaintiff owned the subject property and Defendants had no ownership interest. In so deciding, the court found Defendants had defaulted under the written contract for deed, but were month-to-month tenants of the farmhouse and buildings per an oral agreement made after Defendants breached the written agreement. Defendants appeal. This court affirms.

## STANDARD OF REVIEW

In a court-tried case, the judgment of the trial court will be affirmed unless no substantial evidence supports it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We must accept as true all evidence and inferences favorable to the judgment, while disregarding all contrary evidence and inferences. *McClain v. Papka*, 108 S.W.3d 48, 52 (Mo. App.2003). Moreover, we must defer to the trial judge's findings regarding witness credibility as he or she is in the best position to make such determinations. *Id.*

## FACTS

At one time the subject farm was owned by Defendants, Charles and Lois Reed. Charles testified that he and his wife sold it to Dale and Glendora Martin in 1992 for $125,000 cash. Others testified that the 1992 conveyance by Defendants to the Martins resulted because Charles owed Dale Martin money and Dale (who did not want the farm) decided that getting the farm "was the only way I can get my money."[2] Charles' obligation to Dale came about when Dale paid "a number of bad debts" owed by Charles. Dale paid Charles' debts because he (Dale) promised Charles' father "on his deathbed" that Dale would "watch out for Charles."

After Dale and Glendora obtained the farm, they promptly signed a "contract for deed" with Defendants. In pertinent part, the contract (dated March 1992) provided that Dale and Glendora would transfer title of the land to Defendants upon receipt of final payment.[3] The purchase price was $125,000 and the payment provisions were as follows:

1. The plaintiff herein is the Glendora Martin Family Trust which was represented at trial by Freddie Adey and Greg Martin, the successor trustees. The defendants are Charles and Lois Reed, husband and wife. When referring to Defendants individually, we call them by their first names. We intend no disrespect.

2. Dale passed away before trial of the instant case.

3. After Dale's death, Glendora transferred all ownership interest in the subject property to the Plaintiff trust.

"1. All monies shall be paid at the convenience and discretion of [Defendants].
"2. The stated interest rate of eight percent (8%) shall be paid at the simple rate, to be paid yearly on January 15th.
"3. The full amount of the contract price shall be paid within twenty (20) years from this date."

Both defendants, Charles and Lois, admitted that they never paid any yearly interest. At trial, Defendants claimed that, at or near the time of signing the contract, Dale told them they did not have to pay the interest because he put the clause in the contract so the IRS would not impute interest to him if he was ever audited.

Plaintiff presented contrary evidence, which took several forms. In part, Plaintiff adduced evidence that Dale clearly intended for Defendants to pay interest in accordance with the contract provision; that Dale had been a shrewd businessman who always charged individuals interest on loans, even family members.

Additionally, Plaintiff put in evidence an excerpt of Charles' testimony in an earlier, but unrelated case. At that trial, Charles testified he had no recollection of signing the contract for deed. When asked whether he had "some arrangement with [Dale and Glendora] whereby [he] can get the property back," Charles answered, "No." On that occasion, Charles explained his presence on the farm by testifying that he and Lois were living on the property under a "rent agreement."

Plaintiff's evidence about the "rent agreement" (to which Charles alluded in the other litigation) included the following. By the year 2000, Dale told family members about the contract for deed. As Dale explained it, the contract for deed was his way of trying to get the farm back to Charles and yet, get the money back that he had paid out on behalf of Charles. That plan never worked, however, because

in Dale's words, Charles "never paid me a quarter." Consequently, in 1995 or 1996, Dale made another agreement with Defendants. By the later agreement, Defendants were to pay Dale $1,000 per month and, in exchange, Dale would allow Defendants "to use the processing plant, live in the house and use the buildings." After that went on for several months without payment, Dale told Charles, "This ain't going to work." Thereon, another agreement was reached, namely Dale put his cattle on the farm, but Charles was to feed, care for, and look after them. In exchange for Charles' efforts with the cattle, Dale allowed Defendants to live in the farmhouse "free."

At trial, Defendants claimed that they met the terms of the contract for deed by paying the full price ($125,000). They based this on their testimony that Dale and Charles were partners in the cattle business and the profits made were applied to the amount owed under the contract. As stated above, Defendants asserted they owed no interest. Contrarily, Plaintiff presented numerous witnesses who testified there was no partnership.

In its judgment, the trial court found that a valid contract for deed existed between the parties and that it was unambiguous. With that as its premise, the court ruled Defendants could not contradict the terms of the unambiguous contract with evidence that Dale wanted no interest paid. Further, the court found that testimony from Charles and Lois was not credible; that no partnership agreement existed between Dale and Charles; that Defendants breached the contract by failing to pay interest, but the parties thereafter entered into an unwritten lease agreement. This appeal followed.

### Point I: Forfeiture and Waiver Issues

■ We reproduce Defendants' first point relied on as follows:

"That the trial court erred in ruling that [Defendants] breached the contract for deed by failing to make interest payments thereunder and in declaring forfeiture of the real estate, because the court failed to acknowledge that the contract specifically stated that all payments could be made at the 'convenience & discretion of [Defendants],' that the contract did not contain a forfeiture provision, that the Martins had waived the right to declare the non-payment of interest as breach of the agreement, and that the full payment on the contract was not due until 2012."

Essentially, this point has three components. First, there is prong "A" where Defendants claim the trial erred by ruling they breached the contract for deed by failing to make interest payments. Defendants claim this error occurred because the court failed to acknowledge that the contract specifically provided that all payments could be made at the "convenience and discretion" of Defendants and that full payment on the contract was not due until 2012.

Next, prong "B" of Point I asserts that the trial court erred by finding a breach of contract based on nonpayment of interest because Martins had "waived" the right to claim nonpayment as a contract breach.

Finally, in prong "C" Defendants claim reversible error resulted when the trial court declared forfeiture of the real estate because there was no forfeiture clause in the contract for warranty deed.

■ Because Defendants' point attempts to present disparate claims of error, it preserves nothing for appellate review. Structuring a point relied on so that it groups together contentions not related to a single issue violates Rule 84.04.[4] *Stelts v. Stelts,* 126 S.W.3d 499, 504[7] (Mo.

App.2004). " 'Improper points relied on, including those that are multifarious, preserve nothing for appellate review.' " *Id.* at 507[8] (quoting *Burns v. Elk River Ambulance, Inc.,* 55 S.W.3d 466, 477 (Mo.App. 2001)).

Violations of mandatory briefing requirements are also found in the argument section beneath the point relied on. Thus, although the premise of prong "A" of Point I is that the trial court ignored both the "convenience and discretion" contract provision and the "full payment ... not due until 2012" clause, that premise is *never discussed* in the argument section of the brief. Because this claim (whatever it may be) has not been developed, we deem it abandoned. *Wright v. Barr,* 62 S.W.3d 509, 528 (Mo.App.2001).

Another briefing deficiency stems from the fact that Defendants cite cases espousing general principles concerning forfeitures and one case relating to the concept of waiver, yet, glaringly absent is any discussion how those principles and concepts apply to the facts of this case. Stated differently, Defendants wholly fail to develop their argument beyond conclusory allegations. This alone (without regard to the multifarious briefing violation) justifies dismissal of prongs "B" and "C" of Point I. *In re B.S.W.,* 108 S.W.3d 36, 43 (Mo.App. 2003); *White v. Camden County Sheriff's Dept.,* 106 S.W.3d 626, 631–32[4] (Mo.App. 2003); *In re J.L.F.,* 99 S.W.3d 15, 21 (Mo. App.2003).

Another failure by Defendants to preserve a claim of trial court error is found in connection with prong "B" of Point I. There Defendants urge reversal by claiming "Martins ... waived the right to declare the non-payment of interest as breach of the agreement." However, this is an argument first raised in Defendants'

4. All rule references are to Supreme Court Rules (2004), unless otherwise indicated.

motion for new trial. To preserve this defense, Defendants must have raised it via pleading, i.e., in their answer or counterclaim. Their failure to do so constituted an abandonment of the defense. *See* Rule 55.08; *Wallace v. Grasso,* 119 S.W.3d 567, 575 (Mo.App.2003); *Mobley v. Baker,* 72 S.W.3d 251, 257–58 (Mo.App.2002).

■ Defendants' "forfeiture" argument (prong "C" of Point I) is unpreserved for additional reasons. To begin with, the only cases Defendants cite to support their argument are inapposite in that none involve contracts for deed or installment land sale contracts.[5] Failure either to cite *appropriate and relevant authority* or explain its absence justifies the conclusion that the point is abandoned. *Champion v. J.B. Hunt Transport, Inc.,* 6 S.W.3d 924, 931[20] (Mo.App.1999). A more serious flaw is that Defendants' argument faults the trial court for a ruling it never made. Specifically, the trial court never ruled that a forfeiture occurred, as Defendants contend. The court merely held (1) that Defendants breached the contract, and (2) that Defendants voluntarily entered into an oral lease agreement thereafter with Dale and Glendora Martin.[6] Consequently, Defendants are asking that we convict the trial court of an error it did not commit. This we will not do. *Hunt v. Hunt,* 65 S.W.3d 572, 577 (Mo.App.2002).

Rule 84.13(a) is explicit. It provides that "allegations of error ... not properly briefed shall not be considered in any civil appeal." Mindful of that rule and the multiple deficiencies in Defendants' brief, we dismiss Point I.

### Point II: Alleged Conflict of Interest by Trial Judge

■ In their second point, Defendants claim that the trial court erred in failing to grant a new trial because "the court did not acknowledge the appearance of impropriety that existed in the matter." The premise of this argument is Defendants' assertion that the trial judge "had previously been in an adversarial litigation relationship with [Defendants]." In the argument section of Point II, Defendants aver that the previous adversarial relationship between the judge and Defendants "concerns [Defendants] due to the potential that the court could have been prejudiced, even if only subconsciously, to believe that if [Defendants] did not fulfill their prior obligations, that they probably did not fulfill their present obligations in the instant case." [7]

---

5. Those cases are cited for the general principles that forfeitures are not favored by the law and courts will not supply a forfeiture clause in a contract where none exists. *See e.g., Bagby v. Missouri–Kansas–Texas R. Co.,* 351 Mo. 79, 171 S.W.2d 673, 675[2] (Mo.1943). We do not disagree. Defendants fail to realize, however, that this is not a deed or gift case like many of those cited in their brief. This is a *contract* for deed case. Although those principles may apply to such cases (*Fugate v. Rice,* 815 S.W.2d 466, 469–70 (Mo. App.1991)), Defendants never discuss how those concepts are to be applied, in a party's favor, when that party breaches the contract. Such a discussion is essential because it is equally true that (1) a material breach may excuse another party's performance (*Schaefer*

*v. Rivers,* 965 S.W.2d 954, 958[11] (Mo.App. 1998)), and (2) a party to a contract cannot claim its benefits when he or she is the first to violate it (*Boten v. Brecklein,* 452 S.W.2d 86, 92[2] (Mo.1970)).

6. Because Charles admitted that Defendants had a rent agreement with Dale and Glendora, implicit in the trial court's judgment is a finding that the parties mutually agreed to abandon or rescind the contract and enter into a new agreement creating a landlord-tenant relationship.

7. Apparently, before being elected, the trial judge represented a bank that sued Defendants for collection of a note.

The first time Defendants raised this claim was by motion dated November 17, 2003. The judgment was entered on September 25, 2003; consequently, Defendants' motion was untimely and properly denied. *See In re C.N.H.*, 998 S.W.2d 553, 561–62 (Mo.App.1999); Rule 51.05; § 508.120.

■ Moreover, just as prior representation of a party by a judge with regard to a matter unrelated to the current litigation does not mandate disqualification, *Cain v. Hershewe*, 760 S.W.2d 146, 148[1] (Mo. App.1988), a prior representation of an adversary by a judge in an unrelated case does not mandate disqualification. This is especially true when, as here, nothing in Judge Veenstra's actions on the bench or in her rulings indicate an extrajudicial bias against Defendants. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BATES, C.J., concur.