**Ruth R. MILLINGTON, Plaintiff–Respondent,**

v.

**Edwin J. MASTERS and Jackie Masters, Defendants–Appellants,**

and

**Donald R. Cato and Glenda Cato, Defendants,**

and

**Charlotte M. Newton and David Newton, Intervenors–Appellants.**

No. 24478.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 16, 2002.

Motion for Rehearing and Transfer to Supreme Court Denied Jan. 6, 2003.

Application for Transfer Denied March 4, 2003.

Edwin J. Masters, Jackie Masters, pro se.

Charlotte M. Newton, David Newton, pro se.

Thomas W. Millington, Springfield, for Respondents.

NANCY STEFFEN RAHMEYER, Chief Judge.

In 1984, Ruth R. Millington ("Respondent") lived across the street from a vacant lot, which was directly behind a house owned by Bess Masters. Respondent was interested in purchasing the lot and submitted a letter on January 13, 1984 to Dr. Edwin Masters ("Appellant")[1], the son of Bess Masters, for the purchase of all or part of the vacant lot. The letter stated:

> I found a map showing the block in which your mother's home is located. I have typed in names of other owners in this block and I think it is fairly accurate.
>
> I have colored the area I would like to purchase and believe $10,000 would be a fair price for the total colored area, which is about 1–2/3 acres. However, if you wanted to retain more area with the house, then I would like to purchase the area colored green, which goes to the east line of Doug Roe's lot. This is about 1–1/8 acre and I feel like a fair price would be about $8500. I have put an X where I think the tree is located that you mentioned.

---

1. Edwin J. Masters, Jackie Masters, Charlotte M. Newton and David Newton are all appellants in this appeal. Each appellant appears pro se, however, only one brief was filed by Edwin Masters and the remaining appellants joined in his brief. Because this case primarily involves actions and communications by Edwin J. Masters, he is the only appellant referred to as "Appellant" throughout this opinion.

I am, also, enclosing an extra copy of the map for you to keep. After you make a decision on this offer, please let me know. I will then be glad to put the offer in a formal letter that can be taken to the Judge. If this offer is not agreeable with you, I will be glad to discuss it with you further.

I hope that your mother is better.

 Sincerely,

 Ruth Millington

Attached to the letter was a map showing the block in which Bess Masters' house was located. At the time of the letter, Appellant and his sister, Charlotte Newton, were serving as co-guardians of the Estate of Bess Masters, who was ill. In a letter dated January 17, 1984, Appellant informed Respondent: "I have reviewed your offers and believe the $8,500 for the 1⅛-acres is acceptable. I have forwarded this to Judge Mueller. When I hear from her, I will notify you." [2]

A petition was filed in the Probate Division of the Circuit Court of Cape Girardeau County, Missouri for an order to sell the 1⅛ acre lot ("back lot"), which was granted and entered by Judge Mueller on March 23, 1984. A report of sale of back lot to Respondent for $8,500 was filed and an Order of Court Confirming Report of Sale of Real Estate at Private Sale and Ordering Execution of Deed to Purchase was entered April 10, 1984.

From March 1984 to May 1984, Appellant, Respondent, and the attorney for the Estate of Bess Masters, Al Spradling ("Spradling"), communicated via letters regarding the status of the sale. Appellant sent Respondent a letter dated April 2, 1984 in which he stated:

I apologize for the delay in the sale of the lots. To my knowledge all of the paperwork has been completed and it

has been approved by Judge Mueller. I have signed the directive, the deed, and the authorization. It would be helpful for both of us if you would contact Mr. Al Spradling, III of Cape Girardeau and see if anything else needs to be done. I know you would like to go ahead and complete this transaction. I, too, would like to complete this as soon as possible as Mother's guardianship account needs some money.

Appellant listed Spradling's phone number in a postscript.

Appellant sent Respondent another letter, which was dated April 23, 1984. In this letter, Appellant informed Respondent:

I found the abstract to the lots across from your house. That was a small miracle as most of Dad's papers went to Loine. I had sent the abstract to Mr. Spradling's office but I am going to instruct them to mail it to you. I will keep a copy as I see no reason to keep the original. The only significant change in the abstract would have been the divorce proceedings of my parents and those would have been made by Mr. Elvis Mooney. As you know, the property has been in Mom and Dad's possession for over 35 years. I am not anxious to spend more of Mother's money on attorneys fees. After you get the copy of the abstract, look it over and if it is not satisfactory then let me know. This transfer to you will be the only transaction since this abstract was made. There are no doubts whatsoever in my mind about the legitimacy of the title.

If you have any questions, please let me know.

Spradling also sent a letter to Respondent dated April 23, 1984 in which he stated:

---

2. Judge Mueller was the probate judge supervising the Estate of Bess Masters.

We have the abstract finally. I have not brought it up to date, and if you would like it brought up to date, send it on to Bloomfield and ask the abstract company to do that and send the Estate the bill. I might note that the abstract will not contain the Petition to Sell Real Estate, the Order to Sell Real Estate, the Report of Sale, and the Order Confirming Report of Sale, since all of those items are filed in the Circuit Court of Cape Girardeau County. I will state for the record, however, that we have obtained all of these, the Order of Court Confirming the Sale was signed on April 10, 1984, and consequently, we are in a position to deliver to you the Deed. If you need anything else or you want the abstract brought farther than what it is, go ahead and have it done and have the bill sent to the Estate for that information.

In a letter dated May 4, 1984, Appellant informed Respondent:

Mother's guardianship has some bills that are needing to be paid. I hope that we can complete the land transaction as soon as possible. Enclosed is the Deed of Guardian which is ready to be recorded. I think you already have the abstract and I am confident that there are no problems with the title. Please make the check for $8500 to Bess Masters Estate and send it to me here in Sikeston. Thanks for your cooperation in this matter and I apologize for the delays.

Attached to the letter was a Deed of Real Estate by Guardian of the Estate Under Private Sale Ordered by Court.[3]

In May, Respondent retained attorney Elvis Mooney ("Mooney") to examine the title to back lot. Mooney discovered that Bess Masters had a life estate in the property while Appellant and Charlotte Newton had a vested remainder. In Mooney's title opinion, he referenced the guardianship deed.

A letter dated June 7, 1984 from Spradling to Mooney discussed problems with the deed:

I am afraid we have a problem in the transferring of this property. I do not know exactly the procedure and I don't know exactly all of the ramifications but as you are probably aware, Dr. Ed Masters is in bankruptcy. None of us realized that he owned, along with Charlotte, this property and Bess had a life estate. We all were under the assumption Bess owned the property outright. Now that we now know otherwise, the problem is more complicated. I am going to ask Ed to apply to the Bankruptcy Court for release of this property and that all of the money that would go to Charlotte and/or Ed for the sale be turned over to his mother's estate for payment of bills as that is the intention. Ed's bankruptcy is in a contested state at this point as to certain dischargeable debts and I am not sure whether or not the Bankruptcy Court would allow such a filing and grant an order at this time. However, I am going to ask Ed to proceed in that direction through his bankruptcy attorney.

I talked to Mrs. Millington the other day and explained to her that we had some problems but did not go into detail with her on it. I was not sure exactly the problem myself and still am not sure how the Bankrutpcy Court will have to handle it and I am sure there is going to

---

**3.** Respondent states she was unaware of the deed until the day of the trial, however, there is no question that she was aware that the property was in probate as there are numerous letters between the Respondent, Appellant and the attorney for the Estate of Bess Masters which reference the probate proceedings.

have to be some amended schedules filed in Ed's bankruptcy. Obviously, Mrs. Millington can't get good title without an order from the Bankruptcy Court authorizing the sale. I know she is anxious to get this matter concluded and Ed is too as the money in the estate is dwindling. I wanted to let you know where we stand in this matter and by copy of this letter I am informing Ed and his bankruptcy attorney of the problem and hopefully it can be resolved.

Bess Masters died on September 28, 1984. Her estate was closed on September 5, 1985.[4]

On October 24, 1984, Spradling sent a letter to Mooney enclosing an executed quitclaim deed for back lot wherein Charlotte Newton and her husband, David Newton, quitclaimed their interest to Respondent. Prior to receiving the quitclaim deed, in a letter dated June 11, 1984, Mooney advised Spradling:

Thank you for your informative letter; these problems were not unexpected.

One possible start on the solution of this problem would be the transfer of the interest which could be transferred; that is, the life estate can be conveyed, as can the interest of the daughter. Fixing the value of the life estate is possible by use of the statutory table; and this automatically fixes the value of the remainder. The transfers could be processed with the funds in escrow until the complete title could be conveyed. The trustee in bankruptcy is limited to one-half the reasonable, or more accurately the attainable, value of the remainder. If the value of the interest of the Doctor could be agreed to by the trustee and attorney in bankruptcy, the interest could be released for this conveyance. Also I would believe the trustee could execute a conveyance.

Mrs. Millington is desirous of buying this tract; however, she has been in the hospital for suregery [sic] and I have not duscussed [sic] this development with her. See what you can come up with, let me know, and I will discuss the situation with Mrs. Millington and get back to you.

Respondent testified that she received a copy of this letter from Mooney, but she never put any money in an escrow account, nor did she pay any money to the Newtons or Appellant for back lot. Furthermore, she did not record the deed for over twelve years and did not pay any taxes on the property until 1998. Although Respondent testified that a few oral communications with Appellant were made between October 1984 and January 1991, there were no further written communications between Appellant and Respondent regarding the sale of back lot.[5]

After Respondent recorded the deed, she had her name placed in the assessor's rolls and paid one-half of the taxes on back lot for 1998, 1999, and 2000. There is evidence that she also arranged for back lot to be mowed at least once. No notice was given to Appellant or Charlotte Newton of the recording of the deed or of the payment of property taxes. Appellant discovered the deed had been recorded when Glenda Cato sent him a copy of a newspaper reporting the recording of the deed.

In a letter dated December 23, 1998, Appellant informed Respondent that she had no interest in the property because

4. No claim was ever filed by Respondent with the estate or the bankruptcy court supervising Appellant's bankruptcy.

5. Through conversations with Glenda Cato, Respondent learned that Donald and Glenda Cato had moved into Bess Masters' house and expected to get a deed to the house once Appellant's bankruptcy was resolved.

her offer to buy back lot was withdrawn by a letter from Mooney, which had assured Appellant the quitclaim deed would be returned.[6] Subsequently, Respondent sent Appellant a letter stating that she had never withdrawn her offer and she was ready to pay $8,500 for back lot upon receiving a warranty deed. In a second letter dated May 3, 1999, Respondent informed Appellant that the name on the warranty deed should be stated as "Ruth R. Millington, Trustee[,] Ruth R. Millington Living Trust dated March 23, 1984."

In a handwritten note to herself, which was dated "about Mar. or Apr., 1999," Respondent stated:

> Don Cato[7] was in the Bank lobby & asked to talk with me. We discussed the lot Eddie[8] agreed to sell me. Don knows about the letter of 12–23–98 from Eddie to me. Don said he wanted the house & all the land & would not have moved from his Swinton home to the Masters home if he had known that he wouldn't get it all. I explained about my agreement with Eddie. I told Don that Glenda & I had discussed this agreement several times. Glenda had said to me at one time that "maybe she & Don should buy it all & then sell the backlot to me." I told her that if that was the easiest way to transact the sale so that I would get the lot, I would be agreeable. Don complained that it would cost him & Glenda more if he didn't get all of the land. I told him that I felt like Eddie should give them (Don & Glenda) the 8500.00 that I would pay Eddie for the lot. In other words—what I paid for my lot could be deducted from what he had agreed to pay Eddie for the house & land. Don wanted to know if I would

accept a smaller area of land. I told Don I'd have to think about it. I didn't think I would. I told Don that he should ask Eddie for a copy of my letter to Eddie on 1–11–99 explaining my position. I told Don that I wanted no quarrel with him & Glenda—or with Eddie— but I felt like the lot should be sold to me as per my agreement with Eddie back in 1984.

Despite Respondent's request, Appellant did not sign a warranty deed to the property. Subsequently, Respondent filed a petition against Appellant and his wife, Jackie Masters, and the Catos on July 19, 1999 that included claims for specific performance, title by adverse possession, quiet title, and a claim of fraud solely against Appellant. Appellant and Jackie Masters filed a counter-petition for abuse of process and prima facie tort against Respondent.

The Newtons intervened as party defendants and filed a counter-petition against Respondent to set aside/cancel the quitclaim deed. Appellant and Jackie Masters filed a motion for summary judgment alleging Respondent could not establish the existence of a contract, Respondent's claim was barred by the statute of limitations, Respondent could not establish the elements of specific performance or adverse possession, Respondent's ownership in the property was not superior to Appellant's, and there was no evidence of fraud by Appellant to support Respondent's claim. The motion for summary judgment was taken with the case and tried on March 12, 2001. Respondent dismissed her claim for adverse possession during the trial.

In the judgment entered August 10, 2001, the trial court denied Appellant and

---

6. The legal file does not contain any letters indicating a withdrawal of Respondent's offer.

7. "Don Cato" refers to Donald Cato.

8. "Eddie" refers to Appellant.

Jackie Masters' motion for summary judgment and decided in favor of Respondent on the counter-petitions filed by Appellant and Jackie Masters and the Newtons. The trial court found the issues against Respondent on all her claims except the claim for specific performance and ordered Respondent to tender $8,500 to appellants and the appellants to execute and deliver a warranty deed conveying their interest in back lot. This appeal followed.

Initially, we note that Appellant, who is pro se, filed a 27 point brief. The points are interrelated and essentially state only four points of error: (1) Respondent's claim for specific performance was barred by the statute of limitations; (2) Respondent failed to establish the existence of a written contract; (3) the requirements of specific performance were not met and (4) the quitclaim deed Respondent received from the Newtons should have been set aside because Respondent failed to provide any consideration for the deed. Respondent requests that the appeal be dismissed for Appellant's failure to comply with Rule 84.04 [9].

█ Were this a close call, we would not hesitate to dismiss the appeal as we are entitled to do in this case. *See Kittle v. Kittle*, 31 S.W.3d 127, 129 (Mo.App. S.D. 2000). The fact that Appellant is not an attorney is irrelevant. *"Pro se* parties are bound by the same rules of procedure as parties represented by lawyers, and are not entitled to indulgences they would not have received if represented by counsel."

█ *Belisle v. City of Senath*, 974 S.W.2d 600, 601 (Mo.App. S.D.1998). Generally, however, we do not exercise our discretion to disregard a defective point unless it impedes our ability to dispose of the appeal on its merits. *Superior Ins.*

*Co. v. Universal Underwriters Ins. Co.*, 62 S.W.3d 110, 118 (Mo.App. S.D.2001). A defective brief impedes disposition of an appeal on the merits only when it fails to notify the other parties and the appellate court of the basis for the claimed error. Id. Appellate courts may exercise their discretion to review the argument portion of a brief to decide if there was plain error, which would allow relief under Rule 84.13(c). *General Motors Acceptance Corp. v. Crawford*, 58 S.W.3d 529, 534 (Mo.App. S.D.2001). Respondent appears to have been able to discern the basic contentions of appellants' brief. To prevent manifest injustice or a miscarriage of justice, we exercise our discretion to review the appeal. See Rule 84.13(c). Respondent's motion to dismiss is overruled. Because of plain error, we find the judgment cannot stand.

█ The appellants' first argument is that the trial court erred in finding in favor of Respondent and ordering specific performance of the alleged contract because Respondent's claim was barred by the statute of limitations. The argument has merit. Section 516.110 [10] provides that actions "upon any writing, whether sealed or unsealed, for the payment of money or property" are to be brought within ten years. When an action is for the enforcement of a contract, rather than for damages for a breach of contract, the ten-year statute of limitations applies. *Lake St. Louis Community Ass'n v. Oak Bluff Preserve*, 956 S.W.2d 305, 308 (Mo.App. E.D. 1997). An action for specific performance is triggered by a "failure to do the thing contracted for at the time and in the manner contracted." *Hart v. Dick*, 570 S.W.2d 820, 822 (Mo.App.1978). Because Respondent's claim is for specific performance of

---

9. All rule references are to Supreme Court Rules (2002), unless otherwise indicated.

10. All references to statutes are to RSMo 2000, unless otherwise indicated.

the alleged written contract, Respondent had ten years to file her claim.

■■ As can be seen from the letters, it is difficult to find that a valid contract existed between the parties, however, if a contract existed at all, it was between the Estate of Bess Masters and Respondent. Appellant, Jackie Masters and the Newtons have never been bound in their individual capacities as the owners of the remainder. Nevertheless, because we find this appeal can be resolved based on the statute of limitations, we do not address the remaining arguments. Assuming, without deciding, that the written correspondence between the parties was a valid contract for the sale of back lot, we must discern when the ten-year statute of limitations began to run. Respondent submitted to Appellant what we shall construe as a written offer on January 13, 1984. Respondent considered Appellant's response of January 17, 1984 an acceptance of this offer. Neither of these letters, nor any subsequent letters, specified a time in which Appellant was required to tender the deed to back lot to Respondent; however, when no time is specified in the agreement, performance must be made within a reasonable time. *Ballenger v. Castle Rock Bldg. Corp.*, 904 S.W.2d 62, 65 (Mo.App. W.D.1995). What constitutes a reasonable time depends upon the circumstances of each case. Id. Respondent's contract cause of action accrued upon the appellants' failure to do the thing contracted for at the time and in the manner contracted, and the statute of limitations began to run when Respondent could maintain suit. *Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 555 (Mo. banc 1980). On the other hand, for Respondent's tort claim for fraud against Appellant, the statute of limitations began to run when the cause of action accrued to her, when the breach of duty occurred or the wrong was

sustained. *Id.* Because the trial court found no evidence of fraud and that issue was not raised on appeal, we confine our discussion to the statute of limitations on Respondent's claim for specific performance.

In several letters, Appellant indicated he wanted the transaction to be completed "as soon as possible" because his mother's estate needed money. When Respondent submitted the written offer, back lot was owned by the Estate of Bess Masters and Respondent knew that any sale of the property had to be approved by Judge Mueller. The sale was approved by the probate court. In April 1984, Spradling sent Respondent a letter stating "we are in a position to deliver to you the Deed." Appellant enclosed a guardianship deed to back lot in a letter dated May 4, 1984; however, Respondent did nothing in response to these letters. Respondent did not file any claims against the Estate of Bess Masters or any causes of action against Appellant as co-guardian of the estate. Because the alleged contract was between Respondent and the estate, a reasonable time for performance on the alleged contract would have been prior to the closing of the estate, which occurred on September 5, 1985. Therefore, we determine the statute of limitations on Respondent's claim expired on September 5, 1995. Respondent did not file suit until July 19, 1999; therefore her cause of action is time barred.

■ Respondent claims that her cause of action is not barred by the expiration of the statute of limitations because Appellant acknowledged the agreement before the statute of limitations expired. Section 516.320 provides:

In actions founded on any contract, no acknowledgment or promise hereafter made shall be evidence of a new or continuing contract, whereby to take any

case out of the operation of the provisions of sections 516.100 to 516.370, or deprive any party of the benefit thereof, unless such acknowledgement or promise be made or contained by or in some writing subscribed by the party chargeable thereby.

 Whether an acknowledgment is sufficient to take a contract out of the statute of limitations in satisfaction of § 516.320 is a question of law, not of fact. *Forry v. Department of Natural Resources*, 889 S.W.2d 838, 843 (Mo.App. W.D.1994). No specific form or format for the acknowledgement is required and the promise may be implied, however, an acknowledgment must include an "unqualified and direct admission" of a present promise. *Id.* The acknowledgment must be distinct, unqualified, unconditional, clear, and unequivocal; mere vague and uncertain expressions or conversations will not suffice. *Id.* at 844. The only written communication regarding the sale of back lot between October 1984 and October 1995 was an unsigned letter from Appellant to the Catos dated January 23, 1991.[11] In this letter Appellant stated: "If this is legally free and clear from the bankruptcy, then this would clear the way for us to sell the backlot to Mrs. Miles [12] and the house to you. I feel pretty sure that I can get Rusty [13] to agree to our arrangement." This letter contains a vague and uncertain expression of a future plan to sell back lot to Respondent. Appellant's statement that he would try to convince his sister to agree to his proposition indicates the letter does not contain an "unqualified and direct admission" of the alleged contract. *See Forry*, 889 S.W.2d at 843.

Further, this letter does not suffice as a written acknowledgement of the alleged contract because the letter was written and sent to the Catos, rather than Respondent. *See Estate of Markley*, 922 S.W.2d 87, 94 (Mo.App. W.D.1996). In *Estate of Markley*, the court found that the only written evidence of personal loans made to the debtor was contained in a "Statement of Marital Property, Non–Marital Property and Liabilities," which was filed by the debtor when he divorced his first wife. *Id.* The court noted that this document was not given directly to the creditor, the creditor did not request that the debtor draw up the document, and the document contained no promise to pay; therefore, it was not sufficient to remove the debt from the statute of limitations. *Id.* at 95.

Likewise, in this case the document that is alleged to acknowledge the agreement was not prepared for Respondent, nor was it sent to her. Therefore, it was not a sufficient acknowledgement of the alleged contract and, thus, Respondent's cause of action is barred by the expiration of the statute of limitations. Additionally, the quitclaim deed from the Newtons to Respondent must be cancelled.

 Point XXIII of appellants' brief complains of the trial court's denial of Charlotte and David Newton's cross-petition to set aside the quitclaim deed dated October 24, 1984. Respondent recorded the deed in 1997. Point XXIII complains that "no consideration, not even the nominal $10 on the deed" was paid; Respondent admitted the same.

---

**11.** The Catos denied giving a copy of this letter to Respondent.

**12.** "Mrs. Miles" refers to Respondent, as this was her name when she first became acquainted with Appellant.

**13.** "Rusty" refers to Charlotte Newton.

The general rule is that mere absence of consideration is not sufficient to warrant relief by way of equitable cancellation of an executed contract or deed in the absence of some additional circumstance creating an independent ground for granting cancellation, such as fraud or undue influence. *But where a person has been induced to part with a thing of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in the particular case.* [Emphasis added.]

*Drake v. Greener,* 523 S.W.2d 601, 606 (Mo.App.1975).

The evidence in this case was that the Newtons mistakenly believed providing a quitclaim deed would facilitate the sale that had been approved by the probate division of the circuit court in which Bess Master's guardianship had been pending prior to her death. The trial court erred in holding that the mistake on which the giving of the quitclaim deed was based, coupled with a lack of consideration, did not require the quitclaim deed to be set aside. We reverse the part of the judgment that denied the cross-claim to set aside the quitclaim deed on that basis. The trial court committed plain error in denying the claim of the Newtons that sought to set aside the quitclaim deed.

The judgment is reversed and the trial court is directed to enter judgment for the appellants in conformance with the opinion herein.

PARRISH, J., concurs in part and in result, files concurring opinion.

ALMON H. MAUS, SR. J., concurs in part and in separate opinion of Judge JOHN E. PARRISH, files concurring opinion.

JOHN E. PARRISH, Judge, concurring in part and concurring in result.

I concur in the part of the principal opinion that reverses the trial court's denial of Charlotte Newton's and David Newton's cross-petition to set aside the quitclaim deed they gave respondent. I concur in the result reached by the principal opinion in reversing the part of the trial court judgment granting specific performance of a contract.

As the principal opinion acknowledges, the contract respondent seeks to enforce was between respondent and appellants in appellants' capacities of guardians. Appellants were not parties to the contract in their individual capacities. Appellants' inclusion in the contract was as guardians of the Estate of Bess Masters. Because Bess Masters did not own the fee interest in the real estate to which the contract was directed, she, and consequently her guardians on her behalf, lacked capacity to convey a fee interest. Mrs. Masters was possessed only with a life estate. Her interest in the real estate terminated at her death, September 28, 1984.

As the principal opinion points out, the brief filed by appellants Edwin J. Masters (in which appellants Jackie Masters, Charlotte M. Newton and David Newton joined) is anything but exemplary. The points on appeal, however, although not in compliance with Rule 84.04(d), do not impede disposition of the appeal on its merits in that they sufficiently advise the court and respondent of the basis for the claimed errors. Thus, review is permissible for plain error in accordance with Rule 84.13(c). One claim of error, Point XII, complains that the trial court ordered appellants to "give up" their property although they never had a contract with respondent. I would decide the part of the appeal directed the granting of specific performance of a contract on that issue.

The contract respondent sought to enforce was for purchase of real estate owned by Bess Masters. Because Bess Masters had only a life estate in the real estate, all she or guardians on her behalf (with proper court approval) could convey was the life estate.[1] *Michie v. National Bank of Caruthersville,* 558 S.W.2d 270, 275 (Mo.App.1977). The contract to acquire Bess Masters' real estate was executory at the time Bess Masters died. Because Bess Masters' life estate terminated upon her death, the contract was no longer capable of being enforced, a requirement for granting specific performance of a contract. *See Coale v. Hilles,* 976 S.W.2d 61, 65 (Mo.App.1998). I, therefore, concur in the result reached by the principal opinion with respect to respondent's action for specific performance. The trial court committed plain error in ordering specific performance.

ALMON H. MAUS, Senior Judge, concurring in principal opinion and in concurring opinion of Judge PARRISH.

I also concur in the part of the principal opinion that reverses the trial court's denial of Charlotte Newton's and David Newton's cross petition to set aside the quitclaim deed they executed in connection with the proposed sale of the real estate in question by the Estate of Bess Masters, Incompetent.

As outlined in the principal opinion, the judgment of the trial court, which was not premised upon any findings of fact, purports to grant specific performance of a contract stemming from the Respondent's offer of January 13, 1984, to purchase real estate owned by Bess Masters, in which the Respondent states she will "put the offer in a formal letter that can be taken to the Judge." It clearly is an offer to purchase directed to the guardians of the estate.

This action sought specific performance against the Appellants Edwin J. Masters and Jackie Masters and Charlotte M. Newton and David Newton, in their individual capacities. The Appellants deny the existence of a contract imposing upon them an obligation to sell the real property in question. They also assert a number of affirmative defenses. These defenses include the Statute of Frauds and the Statute of Limitations.

The general rule is that a court will not grant specific performance of a contract unless it is so certain and definite in its terms as to leave no reasonable doubt as to the intent of the parties. *Community Land Corp. v. Stuenkel,* 436 S.W.2d 11, 15–16 (Mo.1968); *Bellows v. Porter,* 201 F.2d 429, 431 (8th Cir.1953). The alleged contract upon which the court granted specific performance for the reasons stated in the concurring opinion of Judge Parrish is far from meeting this standard. For that reason, I concur in that opinion.

However, the judgment of the trial court is being reviewed under the "plain error doctrine." That being the case, if by some legal machination one might find that Respondent's letter of January 13, 1984 and the subsequent proceedings resulted in a contract, it is appropriate to consider the affirmative defenses asserted by the Appellants. The parties extensively briefed the issue of whether or not the enforcement of the contract alleged by the Respondent is barred by the Statute of Limitations. The principal opinion finds that it is. I concur in that conclusion.

Further, according to the Statute of Frauds, § 432.010, any contract for the sale of land must be in writing and contain

---

**1.** "Title to the property of an incompetent ward is in the ward." *State ex rel. Emmons v.*

*Hollenbeck,* 394 S.W.2d 82, 88 n. 6 (Mo.App. 1965).

all essential terms of a contract and be signed by the parties to be charged. *Rone v. Reeves,* 20 S.W.3d 526, 529 (Mo.App. S.D.2000); *Vess Beverages, Inc. v. Paddington Corp.,* 941 F.2d 651, 654 (8th Cir. 1991). There is nothing in the record to meet this required standard.

Clearly, in view of the absence of a definitive contract and considering just two of the affirmative defenses relied upon, the judgment for the Respondent is "plain error." I agree that the judgment of the trial court is reversed and the trial court should enter judgment upon Count I for the Appellants.