

# In the
# Missouri Court of Appeals
# Western District

**MARK STEVENSON,**

              **Appellant,**

**v.**

**MARY MAXWELL,**

              **Respondent.**

**WD82549**

**OPINION FILED:**

**MAY 26, 2020**

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Jodie C. Asel, Judge**

**Before Division Three: Anthony Rex Gabbert, Presiding Judge, Edward R. Ardini, Jr.,**
**Judge, W. Douglas Thomson, Judge**

Mark Stevenson appeals the circuit court's judgment finding in favor of Mary Maxwell on

Stevenson's November 3, 2015, Petition alleging Mary Maxwell[1] defaulted on an April 8, 1998,

promissory note and demanding immediate payment of the note balance and foreclosure of the

Second Deed of Trust which secured the debt. Stevenson raises three points on appeal. First, he

contends the circuit court erred in finding Stevenson's claim time-barred because Wayne and Mary

Maxwell ("the Maxwells" collectively) expressly acknowledged the existence of the debt and their

intent to pay in full via three Chapter 13 bankruptcy plans, and thereby revived the debt pursuant

---

[1] Mary Maxwell's husband, Wayne, also signed the promissory note but died prior to Stevenson filing his petition.

to Section 516.320.[2]  Second, Stevenson contends the circuit court erred in finding his claim time-barred because the payments made to Stevenson by the bankruptcy trustees in connection with the Maxwells' bankruptcy cases acted to revive the debt in that the payments evidenced intent by the Maxwells to pay the debt.  Finally, Stevenson contends the circuit court erred in finding his deed of trust was extinguished by the doctrine of merger because the fee title to the property and the interest in the Second Deed of Trust never coincided in one person or entity.  We affirm.

## Factual and Procedural Background

Stevenson and Mary Maxwell stipulated to all relevant facts prior to trial.  On April 8, 1998, the Maxwells executed a promissory note in favor of Stevenson in exchange for a $15,000 loan.  The Note provided that the Maxwells were to pay accrued interest on the loan monthly (12% per annum), with the balance of the Note due one year from the Note's execution, April 8, 1999.  To secure the Note, the Maxwells executed a Second Deed of Trust dated April 8, 1998, and recorded April 9, 1998, in Boone County, Missouri, which covers certain real estate owned by the Maxwells.  Stevenson holds the Promissory Note and the Second Deed of Trust.

The Maxwells made payments in the amount of $150.00 per month toward the indebtedness from May 1998 through July 2000, with the exceptions of October of 1998 and March 2000, when no payments were made, and the month of May 2000, when two payments of $150.00 were made, for a total of approximately $3,900.00.  No payments were made from July 2000 through August 2008.

Stevenson conveyed his interest in the real estate which secured the Second Deed of Trust to 400 N. Roby, LLC, a Missouri limited liability company ("Roby") by warranty deed dated April

---

[2] All statutory references are to the Revised Statutes of Missouri, 2016, unless otherwise noted.

1, 2003, and recorded March 3, 2004, in Boone County. Roby conveyed its interest in the real estate to the Maxwells by a "Corrective Warranty Deed" dated September 20, 2004, and recorded September 21, 2004 in Boone County. The Corrective Warranty Deed states that the Deed is intended to correct a mistaken conveyance by Stevenson to Roby, an LLC Stevenson managed.

On November 27, 2007, the Maxwells filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Western District of Missouri ("2007 Bankruptcy"). The Maxwells filed a Chapter 13 Plan in the 2007 Bankruptcy which provided they make certain installment payments to the Chapter 13 bankruptcy trustee. During the 2007 Bankruptcy, the Maxwells made certain payments to the Chapter 13 bankruptcy trustee.

On March 14, 2008, Stevenson filed a secured claim in the 2007 Bankruptcy in the amount of $38,971.28. Stevenson's loan to the Maxwells was included in the confirmed 2007 Bankruptcy Plan. During the 2007 Bankruptcy, the Chapter 13 trustee made distributions to Stevenson, with the first being September 1, 2008, and the final being May 1, 2009, for a total of approximately $9,798.17. The 2007 Bankruptcy was dismissed by the Bankruptcy Court on April 16, 2009, as a result of default by the Maxwells in making certain payments to the Chapter 13 bankruptcy trustee due under the confirmed Chapter 13 Plan.

On August 21, 2009, the Maxwells filed a second Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Western District of Missouri ("2009 Bankruptcy"). The Maxwells filed a Chapter 13 Plan in the 2009 Bankruptcy which provided they make certain installment payments to the Chapter 13 bankruptcy trustee in accordance with their confirmed Chapter 13 Plan in the 2009 Bankruptcy. On January 8, 2010, Stevenson filed a secured claim in the 2009 Bankruptcy for $32,271.10. Stevenson's loan to the Maxwells was included in the confirmed 2009 Bankruptcy Plan. During the 2009 Bankruptcy, the Chapter 13 trustee made

3

distributions to Stevenson, with the first being February 1, 2010, and the final being December 1, 2010, for a total of approximately $6,324.27. The 2009 Bankruptcy was dismissed by the Bankruptcy Court on January 12, 2011, due to default by the Maxwells in making certain payments to the Chapter 13 trustee due under the confirmed Chapter 13 Plan in the 2009 Bankruptcy.

On November 18, 2011, the Maxwells filed a third Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Western District of Missouri ("2011 Bankruptcy"). The Maxwells filed a Chapter 13 Plan which provided they make certain installment payments to the Chapter 13 bankruptcy trustee pursuant to their Amended Chapter 13 Plan, which was never confirmed. During the 2011 Bankruptcy, the Maxwells made certain payments to the Chapter 13 bankruptcy trustee in accordance with the proposed Chapter 13 Plan. On May 15, 2012, Stevenson filed a secured claim in the 2011 Bankruptcy for $47,564.54. Stevenson's loan to the Maxwells was included in the Maxwells' 2011 Bankruptcy Plan. During the 2011 Bankruptcy, the Chapter 13 trustee made distributions to Stevenson in August and September, 2012, for a total of approximately $3,750.

Wayne Maxwell died September 13, 2013.

Stevenson filed a Petition on November 3, 2015, alleging breach of the Promissory Note and demanding payment of $49,125.80[3] and foreclosure on the Second Deed of Trust. Mary

---

[3] Stevenson loaned the Maxwells $15,000. Had the Maxwells paid the balance when due, Stevenson would have received a total of $16,800, and the Second Deed of Trust on the Maxwells' property would have been released. The Maxwells did not repay the loan when due and, through July 2000, had paid only $3,900 toward the debt.

For the next seven years, the Maxwells made no payment toward the debt and Stevenson took no action to enforce the Promissory Note or foreclose on the Second Deed of Trust. Stevenson, nevertheless, continued to calculate and compound interest on the debt, and when the Maxwells filed the 2007 Bankruptcy, Stevenson submitted a claim for $38,971.28. Stevenson received $9798.17 from the Maxwells' 2007 Chapter 13 Bankruptcy. He received $6324.27 and $3750.00, respectively, from the 2009 and 2011 bankruptcies. Due to the Maxwells' attempts via Chapter 13 of the bankruptcy code to voluntarily restructure and repay their debts, Stevenson had received approximately $23,772.44 by the time his Petition was filed.

4

Maxwell contended Stevenson's claims were barred by the statute of limitations and the doctrine of merger. The trial court entered judgment in favor of Mary Maxwell. This appeal follows.

## Standard of Review

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id*. at 123. We will affirm the judgment if it is correct under any reasonable theory supported by the evidence. *Williams v. State, Dept. of Social Services, Children's Div.*, 440 S.W.3d 425, 427 (Mo. banc 2014). "Whether a statute of limitations applies to a given cause of action is [] reviewed *de novo*." *Davison v. Dairy Farmers of America, Inc*., 449 S.W.3d 81, 83 (Mo. App. 2014).

## Point I – Section 516.320 Acknowledgment of Debt via Bankruptcy Plan

Stevenson contends in his first point on appeal that the circuit court erred in finding his claim time-barred, arguing the Maxwells' Chapter 13 Plans represented written acknowledgements of the debt, with an intention to pay pursuant to Section 516.320, so as to "revive" the debt.

"A cause of action accrues, and the limitation period begins to run, when the right to sue arises." *Boland v. Saint Luke's Health Sys., Inc*., 471 S.W.3d 703, 710 (Mo. banc 2015). When a payment obligation has a specific due date, the cause of action accrues on that date. *Harms v. Harms*, 496 S.W.3d 534, 537-39 (Mo. App. 2016) (finding that a cause of action on a promissory note accrued under Section 516.110 on the note's stated maturity date). Here, the stated maturity

date requiring payment in full of all principal and accrued interest was April 8, 1999. Pursuant to Section 516.110, the limitations period, therefore, expired April 8, 2009.[4]

Stevenson filed his Petition on November 3, 2015. Although filed more than six years after the limitations period expired, Stevenson contends the Maxwells' Chapter 13 bankruptcy filings "revived" the debt such as to restart the statute of limitations under Section 516.320.

Section 516.320 provides:

> In actions founded on any contract, no acknowledgment or promise hereafter made shall be evidence of a new or continuing contract, whereby to take any case out of the operation of the provisions of sections 516.100 to 516.370, or deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing subscribed by the party chargeable thereby.

"Whether an acknowledgment is sufficient to take a contract out of the statute of limitations in satisfaction of § 516.320 is a question of law, not of fact." *Millington v. Masters*, 96 S.W.3d 822, 831 (Mo. App. 2002). While no specific form or format for the acknowledgment is required and the promise may be implied, an acknowledgment must include an "unqualified and direct admission of a present promise." *Id.* (Internal quotation marks and citation omitted). "The acknowledgment must be distinct, unqualified, unconditional, clear, and unequivocal; mere vague and uncertain expressions or conversations will not suffice." *Id.*

---

[4] Although the parties stipulated that voluntary payments were made by the Maxwells to Stevenson through July 2000, neither party argues that this voluntary payment extended the statute of limitations; both parties focus on whether inclusion of the debt in the voluntary bankruptcy filings, the bankruptcy plans, and payments by the trustees represented acknowledgment of and intent by the Maxwells to pay that debt such that the original April 8, 2009, statute of limitations was extended pursuant to Section 516.320. Because the exact date the statute of limitations ran in this case would not impact our disposition (even after applying various events that might have renewed or tolled the limitations period), and the parties make no argument to the contrary, we need not discuss whether the July 2000 payment, 11 U.S.C. § 108 (c), 11 U.S.C. § 362(a), or 11 U.S.C. § 362(c) changed the expiration date.

6

Stevenson argues that the Maxwells' "listing of their indebtedness to him, along with an indication of their intent to pay it in full during the life of each of their three Chapter 13 Plans, constitutes an 'acknowledgement contained by or in some writing subscribed by the part(ies) chargeable thereby,' and revived the debt." Stevenson contends that, unlike Chapter 7 bankruptcy which allows a debtor to receive a fresh start, Chapter 13 bankruptcy enables debtors to pay their debts through restructuring. Therefore, he claims including a debt in a Chapter 13 plan is a distinct, unqualified, unconditional, clear, and unequivocal acknowledgment of an intent to pay that debt.[5]

Stevenson contends the Maxwells first acknowledged and promised to pay the debt in their 2007 Bankruptcy via the July 17, 2008, Chapter 13 Plan filed in connection therewith, with the limitations period beginning anew on that date and renewing with each payment made on that Plan by the bankruptcy trustee. In support of these positions Stevenson asserts that, when acknowledgment is made before a debt is barred, the statute of limitations begins to run from the time of acknowledgment.

Yet, a written acknowledgment sufficient to take a contract out of the statute of limitations in satisfaction of Section 516.320 must be prepared for and delivered to the creditor. *Millington*, 96 S.W.3d at 831; *Estate of Markley*, 922 S.W.2d 87, 95 (Mo. App. 1996). In *Estate of Markley* we found that a debt listed in a "Statement of Marital Property, Non-Marital Property and Liabilities" during a debtor's divorce was insufficient to satisfy Section 516.320 because the document was prepared for the debtor's divorce, not the creditor; it was also not sent to the creditor. 922 S.W.2d at 95. Likewise, in *Millington v. Masters*, the Southern District presumed that a

---

[5] He further contends, as discussed in Point II below, that a bankruptcy trustee's payments toward that debt represent voluntary payments by the debtors such that, under Section 516.320, the statute of limitations renews with each payment.

contract to sell a tract of land was entered into by litigants Millington and Masters. 96 S.W.3d at 830. Although Millington filed her petition to enforce that contract approximately four years after the statute of limitations expired, Millington claimed Masters acknowledged the contract in a letter to another individual (who ultimately purchased the home located in front of the tract of land Millington desired). *Id.* at 831. The court found that the letter was insufficient written acknowledgment under Section 516.320 of the alleged contract because the letter was not prepared for or sent to Millington. *Id.* The same is true here. The Bankruptcy Plans were prepared for the bankruptcy court, not Stevenson. Consequently, the Bankruptcy Plans are insufficient "acknowledgments" of the Promissory Note debt such as to take the contract out of the statute of limitations in satisfaction of Section 516.320. *Millington*, 96 S.W.3d at 831.

Further, as discussed above, an acknowledgment must be "distinct, unqualified, unconditional, clear, and unequivocal." *Id*. Here, in reviewing the writings (i.e., 2007, 2009, and 2011 Bankruptcy Plans) subscribed to by the Maxwells, we cannot agree that these represent unqualified, unconditional, or unequivocal acknowledgments of an intent to pay the debt owed Stevenson on any terms other than those set forth in the Bankruptcy Plans. In each of the Bankruptcy Plans subscribed to by the Maxwells, acknowledgment of and payment of the debt to Stevenson is qualified by the terms of each Plan. The 2007 and 2009 Plans state that the debt will be repaid "through this Plan." The 2011 Plan states that the debt will be paid "from the plan payments." Further, that Stevenson's claim could be modified pursuant to 11 U.S.C. § 1322(a)(5).[6]

---

[6] 11 U.S.C. § 1325(a)(5) states that, with respect to each allowed secured claim provided for by the plan, the plan must provide that the holder of the claim retain the lien until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328. 11 U.S.C. § 1325(a)(5) further states that, "if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law." 11 U.S.C. § 1325(a)(5)(B)(i)(II).

We find the "writings" in this case insufficient to satisfy the standard required under Section 516.320.

We conclude that, because the Maxwells' Bankruptcy Plans were not prepared for Stevenson and do not reflect an unconditional, unqualified intent by the Maxwells to repay the loan, the Plans are insufficient acknowledgment of the debt under Section 516.320.

Point I is denied.

**Point II - Section 516.320 Acknowledgment of Debt via Bankruptcy Payments**

In Stevenson's second point on appeal, he contends the bankruptcy trustees' payments in connection with the Maxwells' three bankruptcies revived the debt because the payments evidenced intent on the part of the Maxwells to pay the debt pursuant to Section 516.320.

There is no evidence in the record that the payments to Stevenson made by the bankruptcy trustees were subscribed by the Maxwells as required to constitute as a written acknowledgment of a contract under Section 516.320. Section 516.320 necessitates a "writing subscribed by the party chargeable thereby."[7] Stevenson ignores this element of Section 516.320 and instead emphasizes that the Maxwells "directed" the trustees to make payments pursuant to the Bankruptcy Plans and contends this proves "an obvious and voluntary expression of their intention to repay the subject debt in full."

---

[7] We are mindful of case law holding that, where nothing appears to show a contrary intention, part payment on a debt acknowledges the existence of the indebtedness and raises an implied promise to pay the balance, thereby tolling the statute of limitations. *Heidbreder v. Tambke*, 284 S.W.3d 740, 747 (Mo. App. 2009). Here, Stevenson does not argue that the trustee payments by themselves, outside of the context of representing an acknowledgment of and intent by the Maxwells in the Chapter 13 Bankruptcies to pay the debt, are sufficient to extend the statute of limitations under Section 516.320. Although we are suspect such an argument would have been successful given that the facts of this case show that the writings which authorized the payments reveal the debtors' intent, we do not address this issue as it was not raised by the parties.

Yet, for a payment to toll the statute of limitations, "*the payment must be made by someone legally bound to pay the debt*." *Corrales v. Murwood, Inc.* 232 S.W.3d 609, 612 (Mo. App. 2007) (emphasis original) (citing *Coleman v. Trueblood*, 172 S.W.2d 863, 865 (Mo. 1943). *Corrales* v. *Murwood, Inc.* explains examples in Missouri case law where, although an individual agreed to assume an original debtor's debt and made payments on that debt, the payments represented no contractual obligation with the lender such that the payments extended the statute of limitations on the original note between the lender and the original debtor. *Id.* at 612-614 (discussing *Frase v. Lee*, 134 S.W. 10 (Mo. App. 1911) and *Regan v. Williams*, 84 S.W. 959 (Mo. banc 1905)).

"The bankruptcy trustee is not the agent or employee of the bankrupt but merely manages the estate of the bankrupt; as such, the trustee has no authority to make promises on behalf of the bankrupt." *Person Earth Movers, Inc. v. Buckland*, 525 S.E.2d 239, 241 (N.C. App. 2000). The Maxwells' bankruptcy filings did not make the trustees a party to the Promissory Note; no legal obligations were created between the trustees and Stevenson. There is no evidence in the record as to who signed the payments, and a trustee's signature on a payment would be insufficient written acknowledgment by the Maxwells under Section 516.320, because that provision specifically requires the writing be signed by the party chargeable thereby. The Maxwells, and not the bankruptcy trustees, were liable for the debt, and the trustees were not agents of the Maxwells such

10

that a trustee signature could bind the Maxwells.[8]

Stevenson also argues that, because Chapter 13 bankruptcy filings are "voluntary," then any debt included within a Chapter 13 payment plan is a voluntary acknowledgment of that debt sufficient to toll the statute of limitations under Section 516.320, and any payments made pursuant to a plan further evidence voluntary acknowledgments of and promises to pay the debt.[9] Stevenson relies on *In re Fielding*, 2015 WL 1676877 (Bankr. N.D. Tex. 2015), which allowed Chapter 13 bankruptcy debtors to dictate to the IRS how proceeds from the sale of exempt bankruptcy property would be allocated toward IRS debt. *Id.* at 2, 6-7. The IRS argued that, under IRS rules, a debtor may only dictate how *voluntary* payments are allocated, and payments made after the initiation of bankruptcy proceedings are *involuntary*. *Id.* at 2. The court concluded that the payments in *Fielding* were "voluntary."

We find *Fielding* limited to the facts of that case and inapposite here. *Id.* at 8. The *Fielding* payments were pre-confirmation; they were not payments within any bankruptcy plan. *Id.* at 3.

---

[8] Further, the implications of any payments made by a trustee in connection with the Bankruptcy Plans are limited by the scope of the Maxwells' promises therein.

> If the debtor make a payment on the debt without any statement, or under circumstances raising no inference that he refuses to pay the balance of the debt, a promise to pay the balance may be implied. However, if he accompanies his acknowledgment, either directly or by part payment of the debt, with the statement that he does not recognize an obligation to pay the balance, the acknowledgment is ineffectual.

*Green v. Boothe*, 188 S.W.2d 84, 89 (Mo. App. 1945). Here, the Maxwells' debt to Stevenson was referenced in very specific, qualified terms within the Bankruptcy Plans. The Maxwells only agreed to pay the debt pursuant to the Bankruptcy Plans. There is no acknowledgment within those plans of an intent to pay the debt outside of the bankruptcies.

[9] We are not convinced a "voluntary" bankruptcy necessarily means that everything occurring within that bankruptcy is voluntarily espoused by the debtor where debtors are required to report all known creditors upon filing for bankruptcy and can face criminal penalties for failing to do so. Regardless, we find the issue of whether the bankruptcy itself was voluntary or involuntary irrelevant under Section 516.320 which requires interpretation of the specific writing subscribed to by the debtors that allegedly brings the debtor within the statute.

11

The IRS had a claim within the bankruptcy and the debtors' intent was to use proceeds from the sale of exempt property to lower the balance of the IRS debt. *Id.* at 6. The debtors' unconfirmed, Amended Plan with the bankruptcy court stated that, "Debtors intend to sell assets against which IRS has a lien in order to pay the secured and priority claims of IRS." *Id.* at 3. Although the debtors also intended to sell non-exempt assets to pay down the debt, *Fielding* only considered proceeds from the sale of an exempt (homestead) asset. *Id.* at 1. In concluding payment to the IRS of the proceeds from sale of the exempt asset was "voluntary," the court pointedly noted: "It is important to recognize that in the case at bar, the Proceeds stem from the sale of an exempt asset. Therefore, Debtors' application of the Proceeds would not frustrate confirmation of Debtors' Amended Plan." *Id.* at 9. The court found that the exempt asset, because of its exemption, *would not even be considered* in confirmation of the plan. *Id.* Hence, while the bankruptcy court broached the "voluntary" versus "involuntary" payment issue[10] after the IRS objected to the debtors' Motion to Sell the property, the court did not conclude, as suggested by Stevenson, that payments made in accordance with Chapter 13 bankruptcy plans are "voluntary." This issue was not addressed. The court found only that payment to the IRS of proceeds resulting from the voluntary sale of property *exempt* from consideration in the bankruptcy plan was "voluntary" such that the debtors, and not the IRS, could dictate the manner in which the IRS was to allocate the

---

[10] The court first addressed, and concluded pursuant to *United States v. Energy Res. Co., Inc.,* 495 U.S. 545 (1990), that the bankruptcy court had authority to order the IRS to allocate funds in a specific manner because such designations by the debtor were necessary to effectuate a successful Chapter 13 reorganization. *Id.* at 5.

debt.[11]

We conclude that, because the payments made by trustees under the Bankruptcy Plans were not subscribed to by the Maxwells, the payments do not evidence written acknowledgments of the Promissory Note debt sufficient to take the contract out of the statute of limitations in satisfaction of Section 516.320.

Point II is denied.

Because we find Stevenson's action on the Promissory Note barred by the statute of limitations, we need not address Stevenson's third point on appeal addressing whether Stevenson's Second Deed of Trust was extinguished by the doctrine of merger. Where Stevenson's action on the Promissory Note is barred by the statute of limitations, his right to foreclose on the Second Deed of Trust is also barred. § 516.150; *Sabine v. Leonard*, 322 S.W.2d 831, 837 (Mo. 1959).

**Conclusion**

We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

---

[11] Stevenson also contends the Maxwells' Chapter 13 filings are "the equivalent of a reaffirmation of a mortgage." We find the "equivalent of a reaffirmation" insufficient where 11 U.S.C. 524(c) sets forth specific requirements for reaffirmation of debts during bankruptcy, including voluntary Chapter 13 bankruptcies. Under 11 U.S.C. 524(c), an agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case, is enforceable only to any extent enforceable under applicable non-bankruptcy law, and only if certain requirements are met, including that the agreement is filed with the court and accompanied by a declaration or affidavit of the attorney representing the debtor that the debtor was fully informed of the consequences. This did not occur here; there is no indication in the record that any form of agreement was entered by the Maxwells reaffirming the debt under 11 U.S.C. 524(c) such that it would survive post-bankruptcy.